DeAnna **BRAYTON**, Appellant,

v.

**CITY OF NEW BRIGHTON**, Respondent.

No. C0–94–252.

Court of Appeals of Minnesota.

July 26, 1994.

Review Denied Sept. 28, 1994.

Mark R. Anfinson, Minneapolis, for appellant.

Charles L. LeFevere, Corrine A. Heine, Holmes & Graven, Minneapolis, for respondent.

Considered and decided by KLAPHAKE, P.J., and RANDALL and NORTON, JJ.

## OPINION

RANDALL, Judge.

Appellant DeAnna Brayton commenced this litigation seeking declaratory and injunctive relief against respondent City of New Brighton (the City), asserting that a city ordinance regulating the content and placement of signs was unconstitutional. On the parties' cross-motions for summary judgment, the trial court ruled in favor of the City. We affirm.

## FACTS

The material facts of this case are not in dispute. In March of 1991, appellant placed two signs in the front yard of her home in New Brighton. One of the signs, which was approximately 2 feet by 4 feet in size, expressed criticism of a decision by a district court judge in an animal cruelty case. The other sign, approximately 1 foot by 1½ feet, expressed her opinion on other issues related to the treatment of animals.

Appellant received a letter dated April 5, 1991, from the New Brighton city planner informing her that the signs violated the New Brighton sign ordinance and directing her to remove them. Appellant complied with the City's directive and took down the signs.

Appellant complained to City officials, asserting that the ordinance is unconstitutional. On October 22, 1991, the ordinance was amended by the city council. Appellant subsequently initiated this action challenging certain portions of the amended ordinance as violative of the constitutional right of free expression.

As originally written, New Brighton Code Section 9–040, paragraph (c)(8) allowed for one campaign sign per candidate and issue to be posted only during the election season. There was no provision in the ordinance allowing for opinion signs at any time of the year. The purpose statement of the ordinance cited concerns of public safety.

As amended, Section 9–040, paragraph (c)(16) of the sign ordinance allows a resident to post one "non-commercial opinion sign" on its property, at any time [1]. The portion of the ordinance allowing campaign signs during campaign season was amended to include the following sentence: "Any sign permitted by this paragraph may be used, in lieu of other uses permitted by this paragraph, as a Non–Commercial Opinion Sign." Only this amended ordinance is at issue.

The trial court concluded, and the parties agree, that as amended, the ordinance allows a resident to post one sign on its property

1. A "non-commercial opinion sign" is defined as "[a] sign which does not advertise products, goods, businesses or services and which express-

es an opinion or other point of view. * * *." Sec. 9–030 (Definitions), paragraph (o).

year round, whether it be an opinion sign or a campaign sign. During the political campaign season, a resident is allowed to post additional signs, up to one sign per ballot issue and per ballot candidate. The additional signs may be used to express either a campaign message or an opinion message. Said another way, the amended ordinance allows one noncommercial opinion sign to be posted year round and additional, campaign and/or noncommercial opinion signs during the election season.

In addition to the public safety concerns cited in the original ordinance, the amendments also list the following purposes of the regulation:

> [T]o preserve the residential character of residential neighborhoods; to preserve order and cleanliness; to avoid the appearance of clutter; to protect property values; to avoid litter and the growth of weeds around signs; to reduce the traffic hazard caused by distractions to motorists and impairment of sight lines; to ensure that the city remains an attractive place to live and work; to reduce administrative burdens; and to protect the health, safety, welfare, morals, convenience and comfort of the public.

## ISSUE

Is the sign ordinance, as amended, constitutionally valid?

## ANALYSIS

█ The parties agree that this appeal is limited to an assertion of facial invalidity of the ordinance (other initial claims for relief have been disposed of).

On appeal from summary judgment, the reviewing court must determine whether there are any genuine issues of material fact and whether the trial court erred in its application of the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). The determination of the constitutionality of a statute is a question of law which this court reviews de novo. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985).

The following framework is useful in determining whether an ordinance restricting time, place or manner of speech will survive constitutional scrutiny:

1.) Does the challenged ordinance burden protected speech?

2.) If so, does the ordinance contain content-based restrictions or content-neutral restrictions?

> a.) If the restrictions are content-based, are they necessary to serve a compelling government interest, and are they narrowly drawn to achieve that end?

> b.) If the restrictions are content-neutral, do they serve any substantial government interest, are they narrowly tailored to further this interest, and do they leave open ample alternative means for communicating the desired message?

*See Simon & Schuster, Inc., v. New York Crime Victims Board,* 502 U.S. 105, ——, 112 S.Ct. 501, 508, 116 L.Ed.2d 476 (1991); *Clark v. Community for Creative Non-violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984).

The parties agree the limitation on speech contained in the ordinance is a burden on speech. The parties also agree that the City's interest in traffic safety, aesthetics, and retaining the residential character of its neighborhoods are "substantial," but not "compelling" governmental interests. Therefore, the issue is whether the ordinance is a content-neutral regulation and, if so, whether it satisfies the requirements of narrow tailoring and adequate alternatives so as to be a valid time, place, and manner regulation.

*Content–neutral.*

█ In determining whether a government regulation is content-neutral, the government's purpose is the controlling consideration. *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 2754, 105 L.Ed.2d 661 (1989). A regulation is content-neutral only if it is justified without reference to the content of the regulated speech. *Id.* at 791, 109 S.Ct. at 2754. The purpose portion of the ordinance states that it is based on concerns for public safety, order, cleanliness, aesthetics, and administrative convenience. Because these concerns are not re-

lated to content, the trial court concluded the ordinance is content neutral.

A regulation that places a higher value on certain topics of speech creates the danger of impermissible content discrimination. *See City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 816, 104 S.Ct. 2118, 2135, 80 L.Ed.2d 772 (1984). Appellant argues that the ordinance is not content neutral because, as amended, it incorporates a preference for political signs over non-commercial opinion signs. Appellant bases her argument on the fact that the ordinance provides for additional signs during the political campaign season.

In support of her argument, appellant cites *Goward v. City of Minneapolis,* 456 N.W.2d 460 (Minn.App.1990). In *Goward,* the ordinance at issue permitted campaign related signs on private property but *did not allow* signs expressing an opinion critical of the city government. The ordinance was content-based because it permitted campaign signs while *completely prohibiting* opinion signs. The ordinance was found to be unconstitutional because it placed a total ban on a particular category of speech, namely, opinion signs. *Id.* at 465. The facts of the *Goward* case are not close to the facts of this case. The City of New Brighton not only does not totally ban anything, but carefully allows *any* opinion on *any* issue subject to the same time frames as political speech.

The trial court concluded the ordinance does not "favor" political speech over opinion speech because it does not allow a greater number of campaign signs than opinion signs. Both are treated identically at all times. The portion of the ordinance allowing campaign signs during campaign season, paragraph (c)(8) of section 9–040, was amended to include the following sentence: "Any sign permitted by this paragraph may be used, in lieu of other uses permitted by this paragraph, as a Non–Commercial Opinion Sign." When read as a whole, the ordinance, as amended, allows a resident to post one sign on his property, year round, whether it be an opinion sign or a campaign sign. During the political campaign season, a resident is allowed to post additional signs, up to one per ballot issue and candidate. The additional signs may be used to express *either* a campaign message *or an opinion message.*[2] That is, during the campaign season, a resident is not limited to political speech but can put up as many noncommercial opinion signs as there are issues and ballots, the same as those professing political speech. During all other times of the year, a resident may put up one sign; either a noncommercial opinion sign or a campaign sign, with any message, and multiple messages, if desired, on the same sign. In contrast to *Goward,* the New Brighton ordinance is decidedly content neutral.

New Brighton allows various types of commercial signs such as "for sale" or "for rent" signs. Appellant asserts that since the posting of campaign signs is limited (outside the

2. Appellant urges on the court consideration of a recent U.S. Supreme Court case, *City of Ladue v. Gilleo,* —— U.S. ——, 114 S.Ct. 2038, 129 L.Ed.2d 36 (1994). We do not find *Ladue* dispositive but simply instructive on the general principle that when municipalities use their legitimate police power to regulate signage, that power needs to be narrowly tailored to protect legitimate governmental interests. Minimizing visual clutter, maintaining property values, public safety, the elimination of traffic hazards, are legitimate purposes providing the regulations are carefully drawn, reasonable, and do not impermissibly prefer one kind of speech over another. The failure of the municipal ordinance in the City of Ladue is simply put. The *Ladue* ordinance attempted to ban *all* residential signs except for those falling within one of certain stated exemptions. Thus by analogy, those purposes falling within the listed exemptions were preferred over all others.

Here, the City of New Brighton has done no such thing. The ordinance at issue was carefully drawn to allow any opinion on any sign at exactly the same times that political signs are allowed. During the campaign season, campaign signs and noncommercial opinion signs are virtually unlimited. The only limit is one sign per ballot issue and one per ballot candidate. Between ballot issues, local elections, school board elections, judicial elections, state and national elections, a few to dozens of signs would be allowed. In the noncampaign season, campaign signs and noncommercial opinion signs had exactly the same privilege—one sign of any message on any issue at any time year around, with the added benefit to homeowners that the one sign could be changed daily and the one sign could contain any number of multiple messages.

campaign season) in duration under the ordinance but commercial signs such as a "for rent" sign can be posted indefinitely, the ordinance impermissibly favors some forms of commercial speech over political speech. We disagree. Appellant's argument misinterprets the ordinance. The ordinance allows one noncommercial opinion sign to be posted at *any* time of the year for *any* length of time. That opinion sign can contain *any* type of non-commercial constitutionally protected speech. That sign, by definition, could include, outside the campaign season, political speech. Thus, one campaign sign or political sign can be posted at any time during the year with no durational limit. Further, New Brighton ordinances limit "for sale" and "for rent" signs to one per premises, the same numerical limit imposed upon opinion signs and political signs, except during a short campaign season where numerical limits go up to the number of ballot candidates and issues. Also, signs advertising garage sales, rummage sales, sale of produce grown on the premises, real estate sales, parade of homes production, and church or school events are limited to *one* per frontage, and these types of signs have durational limits as well. Thus, New Brighton has done as well as can be expected in balancing the rights of noncommercial opinion speech, political speech, for sale and for rent signs, casual and for business sale signs, et cetera.

When the smoke clears, *Goward* simply does not apply as it contains a total prohibition against opinion speech. There is no such prohibition in New Brighton.

We conclude the ordinance is content-neutral. We now turn to whether it (1) is narrowly tailored to meet significant governmental interests, and (2) leaves open adequate alternative channels of communication. *Clark,* 468 U.S. at 293, 104 S.Ct. at 3069.

*Narrowly tailored to meet substantial government interests.*

Appellant concedes that the interests involved, aesthetics and traffic safety, are substantial government interests. *See Taxpayers for Vincent,* 466 U.S. at 806–07, 104 S.Ct. at 2129–30; *Metromedia Inc., v. San Diego,* 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981). The cases cited by ap-

pellant and respondent repeat the proper use of governmental power to protect substantial governmental interests if the protection is reasonable and narrowly tailored.

■ The requirement of narrow tailoring is satisfied if the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation. *Rock Against Racism,* 491 U.S. at 799, 109 S.Ct. at 2758. The regulation need not be the least restrictive or least intrusive means of furthering the government's interests. *Id.* at 798, 109 S.Ct. at 2757–58.

Because the ordinance allows appellant to post at least one opinion sign, which can contain multiple messages, on one or multiple issues, at any time of the year, it is reasonably and narrowly tailored. The ordinance contains a modification for election season. The City can reasonably conclude that the concerns for aesthetics and public safety are served by the one sign (multiple message) limit that is in effect most of the year. The City can also reasonably conclude that the balance shifts in favor of fewer limitations during the short election season. *See Goward,* 456 N.W.2d at 464 (only the narrowest range of restrictions should be imposed by the city on political speech, the core of first amendment protection). We find no merit in appellant's assertion that the City's reasons for the ordinance are pretextual.

*Alternative channels of communication.*

■ To be constitutionally valid, a regulation must not impair the speaker's ability to convey a message to the desired audience. *Goward,* 456 N.W.2d at 467–68. Alternative channels of communication must exist and must be adequate. *Taxpayers for Vincent,* 466 U.S. at 812, 104 S.Ct. at 2132. Here, appellant can present one or more opinion messages on one sign on her property at any time, and multiple signs with multiple messages during the election season. This satisfies the requirement of alternative channels of communication. Although we do not rest our decision on this point, we agree with the trial court's observation that, in addition to the signage and the multiple messages, there are alternative means to express opinions such as handbills, picketing, and letters.

Appellant argues these additional means of communication—handbills, picketing, and letters—are not adequate as to her based on an assertion of lack of time and/or money. The trial court noted appellant's position on this issue but properly found that these alternative means of communication are *in addition to* the posting of one opinion sign at any time and additional opinion signs during the election season. *Cf. Goward,* 456 N.W.2d at 468 (a total ban on one form of political expression, namely, lawn signs, was unconstitutional).

Reasonable regulation and the reasonable use by a governmental entity of police power is as essential to the first amendment and free speech as the right of free speech itself. Concededly, the framers of our United States Constitution and its Bill of Rights mandated the judiciary to scrutinize the exercise of governmental police power. But the framers also assumed that the exercise of some police power was reasonable, did happen, that it would happen, and that it would be essential in a democracy. The complete absence of regulation and a total lack of police power is the definition of anarchy, of chaos. With anarchy the right to put dozens or hundreds of signs on one's lawn would be for naught since anyone disagreeing would simply walk into your yard, knock them over, and if you attempted to rebuild them, simply stay on the lawn and knock them over again.

The City of New Brighton's amended ordinance balances the City's inherent substantial interest in aesthetics, residential home value, visual clutter, and traffic hazards with the right of its residents to express opinions on nonpolitical, political, and business-oriented issues.

## DECISION

This New Brighton sign ordinance does not violate first amendment principles of free expression. The trial court properly granted summary judgment in favor of the City.

**Affirmed.**