[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 564.]

CITY OF PAINESVILLE BUILDING DEPARTMENT, APPELLANT, *v.* DWORKEN &
BERNSTEIN CO., L.P.A., APPELLEE.

[Cite as *Painesville Bldg. Dept. v. Dworken & Bernstein Co., L.P.A.*,
2000-Ohio-488.]

*Municipal corporations—Zoning—Political signs—Court of appeals' judgment
finding Section 1135.02(d) of the Codified Ordinances of Painesville
unconstitutional affirmed.*

Planning and Zoning Code Section 1135.02(d) of the Codified Ordinances of the city
of Painesville, which precludes the posting of political signs except during the
period extending seventeen days preceding any primary election, general
election, or special election until forty-eight hours after the election, violates
the First Amendment to the United States Constitution and is unconstitutional
when applied to prohibit the owner of private property from posting on that
private property a single political sign outside the durational period set by the
ordinance.

(No. 99-1769—Submitted June 7, 2000—Decided September 6, 2000.)

APPEAL from the Court of Appeals for Lake County, No. 98-L-223.

————————————

{¶ 1} Planning and Zoning Code Section 1135.02(d) of the Codified
Ordinances of the city of Painesville provides as follows:

"Political Advertising Signs.

"(1) A political sign shall be any sign concerning any candidate, political
party, issue, levy, referendum, or other matter whatsoever eligible to be voted upon in
any general, primary, or special election; or any sign advocating any type of political
action.

"(2) For a period of not to exceed seventeen (17) days preceding any primary, general election or special election there may be placed on property, with the owner's consent, political advertising signs which shall carry a complete message and shall not exceed sixteen square feet in area. The signs may be double face. Such sign shall not be nearer than five feet to the street line or any boundary line, provided, however, that on a corner property, if the top of such sign is in excess of three feet above the curb grade, then it must be twenty feet or more from the intersection of the street lines.

"(3) A permit shall be required for the placement and use of political advertising signs by each candidate or each campaign supporting an issue. A fee as set forth in Chapter 1149 shall be paid.

"(4) Within forty-eight hours after the election, preceding which a sign has been displayed, the owner of the property on which the sign is located, or his agent, shall cause the sign to be removed."

{¶ 2} On October 15, 1997, a building inspector for the city of Painesville, appellant herein, filed a complaint in the Painesville Municipal Court, alleging that David M. Dworken of appellee law firm Dworken & Bernstein, L.P.A. ("Dworken & Bernstein")[1] "did knowingly post and refused to remove a political sign" erected prior to seventeen days prior to an election. The city alleged that Dworken & Bernstein thereby violated Section 1135.02(d), committing a fourth-degree misdemeanor each day that the violation continued.

{¶ 3} Dworken & Bernstein moved to dismiss the complaint, alleging that Section 1135.02(d) unconstitutionally infringed upon its rights to freedom of speech under Section 11, Article I of the Ohio Constitution and the First Amendment to the United States Constitution.

---

1. The initial complaint in this action alleged that David M. Dworken, individually, was in violation of Section 1135.02(d). Thereafter an amended complaint was filed in which the law firm of Dworken & Bernstein Co., L.P.A. was substituted as defendant.

**{¶ 4}** The trial court denied the motion to dismiss, finding that the regulations contained in Section 1135.02(d) "are necessary to serve a compelling governmental interest." Dworken & Bernstein entered a plea of no contest, was found guilty of a zoning violation, and was ordered to pay a fine of $250. The court stayed execution of the sentence pending appeal.

**{¶ 5}** The court of appeals identified the sole issue before it as being the constitutionality of Section 1135.02(d) with respect to the ban of political signs outside the seventeen-day period prior to any election. It did not examine the constitutionality of any of the remaining portions of the regulation. The court of appeals concluded that the seventeen-day limit of Section 1135.02(d) is unconstitutional and reversed the judgment of the trial court.

**{¶ 6}** The cause is now before this court upon the allowance of a discretionary appeal.

_____

*Edward C. Powers*, *Painesville City Prosecutor*, for appellant.

*Dworken & Bernstein Co., L.P.A*., and *Shawn W. Maestle*, for appellee.

_____

**MOYER, C.J.**

**{¶ 7}** We have examined the law relevant to the issue of the constitutionality of Section 1135.02(d). We conclude that a narrowly drawn municipal ordinance imposing reasonable time, place, and manner restrictions on the display of temporary signs, including political yard signs posted on private property, could constitutionally be enacted. Section 1135.02(d), however, is not such an ordinance, and is unconstitutional when applied to prohibit the owner of private property from posting a single political sign on that property outside the durational period set by the ordinance.

**{¶ 8}** The First Amendment to the United States Constitution provides that "Congress shall make no law * * * abridging the freedom of speech * * *." The

limitation of the First Amendment is applicable to the states and to political subdivisions of the states by virtue of the Fourteenth Amendment. *Gitlow v. New York* (1925), 268 U.S. 652, 45 S.Ct. 625, 69 L.Ed. 1138; *Lovell v. Griffin* (1938), 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed. 949.

**{¶ 9}** Similarly, Section 11, Article I of the Ohio Constitution states that "[e]very citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press."

**{¶ 10}** The posting of signs displaying political messages is a traditional method of speaking and, indeed, " '[c]ommunication by signs and posters is virtually pure speech.' " *Arlington Cty. Republican Commt. v. Arlington Cty., Virginia* (C.A.4, 1993), 983 F.2d 587, 593, quoting *Baldwin v. Redwood* (C.A.9, 1976), 540 F.2d 1360, 1366. A law regulating a property owner's right to erect a yard sign affects both the owner's and the candidates's First Amendment rights. See *Curry v. Prince George's Cty.* (D.Md.1999), 33 F.Supp.2d 447, 449, fn. 3, citing *Craig v. Boren* (1976), 429 U.S. 190, 194-197, 97 S.Ct. 451, 455-457, 50 L.Ed.2d 397, 405-406. Moreover, the First Amendment has " 'its fullest and most urgent application' " to speech uttered during political campaigns. *McIntyre v. Ohio Elections Comm.* (1995), 514 U.S. 334, 347, 115 S.Ct. 1511, 1519, 131 L.Ed.2d 426, 440, quoting *Buckley v. Valeo* (1976), 424 U.S. 1, 14-15, 96 S.Ct. 612, 632, 46 L.Ed.2d 659, 685.

**{¶ 11}** In determining whether Section 1135.02(d) violates the First Amendment to the United States Constitution, it is our duty to examine that ordinance according to analytical principles established by the United States Supreme Court. Traditionally, the first step in such an analysis is to determine whether the regulation at issue imposes a content-based or content-neutral governmental burden upon speech, and then to apply the proper level of scrutiny to the regulation in question. *City of*

*Ladue v. Gilleo* (1994), 512 U.S. 43, 59, 114 S.Ct. 2038, 2047, 129 L.Ed.2d 36, 50 (O'Connor, J., concurring).

**{¶ 12}** Strict scrutiny is employed to determine the constitutionality of a content-based regulation of protected speech. That is, in order to justify a content-based regulation, the government is required to show a compelling interest in order to limit speech, and the regulation must be narrowly drawn to achieve that interest. *United States v. Playboy Entertainment Group, Inc.* (2000), 529 U.S. ___, ___, 120 S.Ct. 1878, 1886, 146 L.Ed.2d 865, 879. "With rare exceptions, content discrimination in regulations of the speech of private citizens on private property or in a traditional public forum is presumptively impermissible, and this presumption is a very strong one." *Ladue,* 512 U.S. at 59, 114 S.Ct. at 2047, 129 L.Ed.2d at 50 (O'Connor, J., concurring).

**{¶ 13}** Where, however, a regulation is found to be content-neutral, a municipality "may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are 'justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.' " (Citations omitted.) *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 791, 109 S.Ct. 2746, 2753, 105 L.Ed.2d 661, 675.

**{¶ 14}** Under conventional constitutional jurisprudence, content-based regulations of core political speech are subject to strict, or exacting, scrutiny to determine whether a limitation is justified by a compelling, or overriding interest. *McIntyre,* at 347, 115 S.Ct. at 1519, 131 L.Ed.2d at 440. With respect to content-neutral regulations, the state must demonstrate that its interest is substantial, as opposed to compelling, and that alternative methods of communicating the message exist despite the imposition of reasonable time, place, and manner regulation.

**{¶ 15}** Whether content-based or content-neutral, however, the regulation must be narrowly tailored to meet the government's interest. It may not limit more

speech than necessary to vindicate the public interest asserted by the government. *Turner Broadcasting Sys., Inc. v. Fed. Communications Comm.* (1997), 520 U.S. 180, 189, 117 S.Ct. 1174, 1186, 137 L.Ed.2d 369, 388. "Broad prophylactic rules in the area of free expression are suspect. * * * Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." (Citations omitted.) *NAACP v. Button* (1963), 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405, 421.

**{¶ 16}** Determination of whether individual regulations are content-based or content-neutral has proved problematic in practice, as demonstrated recently in the various opinions filed in *Hill v. Colorado* (2000), 530 U.S. ___, 120 S.Ct. 2480, 147 L.Ed.2d 597. This is equally so in cases examining the constitutionality of municipal regulations of political signs, including election campaign signs. See *Whitton, Dimas,* etc. cases cited *infra,* at 569-570, 733 N.E.2d at 1157. See, also, Greiman, *City of Ladue v. Gilleo*: Free Speech for Signs, A Good Sign for Free Speech (1995), 14 St. Louis U. Pub.L.Rev. 439, 440. ("[T]he question of what constitutes content-discrimination in the context of sign regulation remains a perplexing problem in First Amendment jurisprudence.").

**{¶ 17}** In *Ladue*, however, the Supreme Court of the United States found it unnecessary to expressly categorize a challenged municipal political-sign ordinance as being content-based or content-neutral, as the ordinance could not meet the constitutional tests applicable to either category.

**{¶ 18}** Margaret Gilleo challenged an ordinance of the city of Ladue, Missouri, which prohibited homeowners from displaying any signs on their property except "residence identification" signs, "for sale" signs, and signs warning of safety hazards. On December 8, 1990, Gilleo had placed on her lawn a twenty-four-by-thirty-six-inch sign printed with the words "Say No to War in the Persian Gulf, Call Congress Now." After that sign was knocked to the ground, Gilleo placed an 8.5 by eleven-inch sign in the second story window of her home stating, "For Peace in the

Gulf." When informed that her signs violated the Ladue ordinance, she challenged its constitutionality by filing a lawsuit under Section 1983, Title 42, U.S.Code, against city officials, alleging that her First Amendment right of free speech had been violated. Both the federal district court and court of appeals declared the ordinance unconstitutional.

{¶ 19} The Supreme Court affirmed in a unanimous opinion. The court recognized that the city had a legitimate interest in regulating signs, which "take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *Ladue,* 512 U.S. at 48, 114 S.Ct. at 2041, 129 L.Ed.2d at 42-43. It noted that it had previously held that a city's " 'interest in avoiding visual clutter' " justified a prohibition of commercial billboards, citing *Metromedia, Inc. v. San Diego* (1981), 453 U.S. 490, 511-512, 101 S.Ct. 2882, 2894-2895, 69 L.Ed.2d 800, 817, and political campaign banners posted on utility posts and crosswires located on public property, citing *Members of Los Angeles City Council v. Taxpayers for Vincent* (1984), 466 U.S. 789, 806-807, 104 S.Ct. 2118, 2134, 80 L.Ed.2d 772, 778. *Ladue*, 512 U.S. at 50, 114 S.Ct. at 2043, 129 L.Ed.2d at 44.

{¶ 20} However, the Supreme Court clearly recognized that signs conveying political messages, such as Gilleo's protest of an imminent governmental decision to go to war, was one of "absolutely pivotal speech." *Id*. at 54, 114 S.Ct. at 2045, 129 L.Ed.2d 46. It described political signs placed in residential yards or in windows as long having been an "important and distinct medium of expression." *Id*. at 55, 114 S.Ct. at 2045, 129 L.Ed.2d at 47.

{¶ 21} "Displaying a sign from one's own residence often carries a message quite distinct from placing the same sign someplace else, or conveying the same text or picture by other means. Precisely because of their location, such signs provide information about the identity of the 'speaker.' As an early and eminent student of

rhetoric observed, the identify of the speaker is an important component of many attempts to persuade. * * *

{¶ 22} "Residential signs are an unusually cheap and convenient form of communication. Especially for persons of modest means or limited mobility, a yard or window sign may have no practical substitute. [Citations omitted.] Even for the affluent, the added costs in money or time of taking out a newspaper advertisement, handing out leaflets on the street, or standing in front of one's house with a hand-held sign may make the difference between participating and not participating in some public debate. Furthermore, a person who puts up a sign at her residence often intends to reach *neighbors*, an audience that could not be reached nearly as well by other means." (*Emphasis sic.*) *Id.* at 56-57, 114 S.Ct. at 2046, 129 L.Ed.2d at 48-49.

{¶ 23} Although the Supreme Court has not considered the issue, the overwhelming majority of courts that have reviewed sign ordinances imposing durational limits for temporary political signs tied to a specific election date have found them to be unconstitutional. *Whitton v. Gladstone* (C.A.8, 1995), 54 F.3d 1400 (ordinance deemed unconstitutional which limited placement or erection of political signs to thirty days prior to the election to which the sign pertains until seven days after the election); *Dimas v. Warren* (E.D.Mich.1996), 939 F.Supp. 554 (ordinance deemed unconstitutional which prohibited posting of political yard signs earlier than forty-five days prior to any election, and ordering removal within seven days after); *Orazio v. North Hempstead* (E.D.N.Y.1977), 426 F.Supp. 1144 (holding that no time limit on the display of preelection political signs is permissible under the First Amendment); *Antioch v. Candidates' Outdoor Graphic Serv.* (N.D.Cal.1982), 557 F.Supp. 52 (ordinance deemed unconstitutional which limited display of political signs to the period sixty days before election); *Collier v. Tacoma* (1993), 121 Wash.2d 737, 854 P.2d 1046 (ordinance deemed unconstitutional which limited posting of political signs to the period sixty days prior to election to seven days after, where no time restrictions were imposed on other temporary signs); *Curry v. Prince George's*

*Cty., supra*, 33 F.Supp.2d 447 (ban on political campaign signs posted on private residences for all but forty-five days before and ten days after an election deemed unconstitutional); see, also, *Christensen v. Wheaton* (Feb. 16, 2000), N.D.Ill. No. 99C8426, unreported, 2000 WL 204225 (granting preliminary injunction enjoining enforcement of ordinance the effect of which was to prohibit the display of political signs for more than thirty days); *Knoeffler v. Mamakating* (S.D.N.Y.2000), 87 F.Supp.2d 322, 327 (noting that "durational limits on signs have been repeatedly declared unconstitutional"); *Union City Bd. of Zoning Appeals v. Justice Outdoor Displays, Inc.* (1996), 266 Ga. 393, 467 S.E.2d 875 (limitation of political signs to six weeks prior to and one week after election deemed unconstitutional); *McCormack v. Clinton Twp.* (D.N.J.1994), 872 F.Supp. 1320 (limitation on political signs to ten days prior to and three days after election deemed unconstitutional). Cf. *Waterloo v. Markham* (1992), 234 Ill.App.3d 744, 175 Ill.Dec. 862, 600 N.E.2d 1320 (ninety-day time limitation for temporary signs not unconstitutional).

{¶ 24} In light of this constitutional precedent, we turn to an analysis of the ordinance before us and its application in the case at bar. Having independently reviewed the record, we agree with the city's acknowledgment that "[t]here is in fact no evidence whatsoever in this case that suggests what message was conveyed by Dworken & Bernstein's sign." Therefore we do not know the language or message conveyed by the sign placed on appellee's property, nor do we know any of the physical characteristics of that sign, such as its size, placement, or the materials used to construct it. However, based on appellee's no contest plea to the charge, we accept as fact that the sign in question was a political sign within the definition of Section 1135.02(d), and was the only sign posted on appellee's property. Like the court of appeals, we limit our consideration of the ordinance to the issue of the constitutionality of the durational limits it contains, as the parties have addressed only that issue.

{¶ 25} We recognize that distinctions may be drawn between the facts of the case at bar and the facts before the United States Supreme Court in *Gilleo.* The

Painesville ban is not total, as political signs are permitted for a period of seventeen days before an election and two days after. However, courts have characterized sign ordinances similar to Section 1135.02(d) as imposing the equivalent of a year-round ban on political sign posting, which is simply temporarily suspended for the prescribed period surrounding an election. See, *e.g.*, *Dimas,* 939 F.Supp. at 556-557.

{¶ 26} Similarly, the appellee law firm did not place its sign on purely residential property, as did Gilleo, but rather on the law firm's property. This fact renders appellee's case somewhat less compelling, although it is clear that the Painesville ordinance does limit the free speech rights of private citizens wishing to place political signs on their own residential property. We nevertheless believe that the underlying principles described in *Gilleo* are applicable to political signs displayed on privately owned office property such as a law office. The posting of a political campaign sign might well have a more significant communicative effect by virtue of its placement on law firm property than had the same sign been placed elsewhere, as in, for instance, the case of a sign advocating the election of a particular judicial candidate. That is, the placement of the sign on private law firm property has a communicative effect, over and above the mere message on the sign, for which there is no substitute, just as does placement on private residential property. See, also, *Whitton*, 54 F.3d at 1402, fn. 2, striking down ordinance providing that no "[p]olitical signs located in an area zoned for industrial or commercial use shall * * * be placed or erected more than thirty (30) days prior to the election to which such sign pertains and such sign shall be removed within seven (7) days after such election."

{¶ 27} We turn to consideration of the issue whether the Painesville ordinance is narrowly tailored to meet the city's proffered interests. Initially, we reject the city's contention that it has a "compelling interest in limiting the amount of time that it is subject to the psychological and economic effects produced by these signs," particularly as there is no evidence before us that the Painesville zoning code imposes durational limits upon any other category of signs, even those which generally pertain

only to special occurrences, such as signs advertising one-time events, *e.g*., yard sales or charitable fundraisers. Indeed, the Painesville zoning code allows certain signs of a commercial nature to be placed in residential districts without limitation as to the period of time they may remain posted, including professional signs, "for sale, lease or rent" signs, and "development for sale" signs, without concern as to the "psychological and economic effects" they might produce. See Section 1135.02(c).

{¶ 28} The city of Painesville further justifies Section 1135.02(d) based on its governmental interest in promoting aesthetic concerns, including the avoidance of visual blight, and traffic considerations, including ensuring an unimpaired line of vision for motorists traveling its streets. We acknowledge, as has the United States Supreme Court in *Ladue*, *supra*, and *Metromedia*, *supra*, that these interests are legitimate.

{¶ 29} However, as in *Ladue*, Section 1135.02(d) prohibits too much speech. In determining whether Section 1135.02(d) is narrowly tailored to meet the city's legitimate governmental interests, we find the definitional section of Section 1135.02(d)(1) particularly troubling. That portion of the ordinance defines political signs, presumably subject to the durational limits of the ordinance,[2] as "any sign concerning any candidate, political party, issue, levy, referendum, or other matter whatsoever eligible to be voted upon in any general, primary, or special election; *or any sign advocating any type of political action."* (Emphasis added.) Gilleo's message to "Call Congress now" to protest the Gulf War would have been prohibited under the Painesville ordinance unless posted within the durational nineteen-day time limits established by the ordinance. This aspect of the ordinance clearly encompasses

---

2. Section 1135.02(d)(1) defines the term "political sign(s)," while Sections 1135.02(d)(2) and (3) refer to "political *advertising* signs," and Section 1135.02(d)(4) refers simply to removal of "a sign" within forty-eight hours after an election. The parties have not argued that these discrepancies are substantive, and we decline to infer such a conclusion, especially as the city used the term "political sign" in the complaint filed against appellee, and deemed it subject to the nineteen-day durational limit.

more speech than is necessary to achieve the legitimate governmental interests of the city of Painesville.

{¶ 30} We take judicial notice that, in Ohio, special elections are relatively uncommon, and most communities experience only two elections a year—a primary election and a general election. Therefore, under Section 1135.02(d), a citizen could legally post a sign such as Gilleo's, urging citizens to contact elected representatives in support of or in opposition to any contemporaneous political issue, only on thirty-eight out of three hundred sixty-five days of most years. On the other three hundred twenty-seven days such messages are completely banned by Section 1135.02(d).

{¶ 31} The ordinance could easily operate to prohibit the display of a political message at the very time it would be most relevant to an issue upon which the citizen wishes to speak. Moreover, under the Painesville ordinance, signs urging fellow citizens to "Support Life [or Choice]" or to "Impeach [or Support] the President," or displaying the message "America—Love it or Leave It" would be illegal, unless posted during a campaign season, even though the speaker's message is of equal relevance during other times of the year. Similarly, Section 1135.02(d) would preclude a permanent sign asserting, "Join the Libertarian Party," even though a second sign, identically constructed and placed, stating, "Eat at Joe's," might well be permitted.

{¶ 32} Moreover, we find the Painesville ordinance to be unnecessarily over-restrictive even as to traditional campaign signs urging the election of a particular candidate or in support of or in opposition to a particular election issue appearing on an upcoming ballot.

{¶ 33} Section 1135.02(d) sets durational limits which do not correspond to the traditional general election season, often deemed as starting on Labor Day and continuing to election day in early November—a period of approximately eight to nine weeks. Indeed, the appellee in the case before us was cited for displaying its sign on or about October 9, clearly within the traditional campaign period.

12

{¶ **34**} But Section 1135.02(d) limits the time in which political campaign signs may be displayed to only two and one-half weeks before election day. By its own terms the ordinance would prohibit the posting of a sign reading "Vote for Bush [or Gore]" in front of Bush (or Gore) campaign headquarters, except for the nineteen-day period set by the ordinance, even though campaigns supporting presidential candidates often are organized at the local level for months rather than days or weeks.

{¶ **35**} Similarly, even assuming that the often flimsy physical characteristics of temporary signs in general, including temporary political campaign signs, justify the imposition of a limit on the length of time they might be posted, so as to avoid the development of litter or unsightly disintegration, the Painesville ordinance precludes candidates from determining themselves the best strategic timing for the posting of their signs. It precludes the posting of all political signs during the nonprescribed periods, including those not likely to cause litter, traffic hazards, or other adverse effects, as well as those that do create such a risk.

{¶ **36**} Section 1135.02(d) simply is not narrowly tailored to achieve the city's legitimate stated goals, and is thus unconstitutional whether ultimately deemed to be content-based or content-neutral. Accordingly, we are constrained to find Section 1135.02(d) to be unconstitutional in violation of the First Amendment as applied to prohibit the owner of private property from posting on that property a single political sign, as defined in the ordinance, outside the durational limits set by the ordinance. The Painesville ordinance is not narrowly tailored to further the governmental interests asserted by the city of Painesville, nor do ample alternative means for communicating the desired message exist for such a property owner. Therefore it does not pass constitutional muster even if assumed, *arguendo*, to be a content-neutral regulation of speech.

{¶ **37**} We therefore hold that Planning and Zoning Code Section 1135.02(d) of the Codified Ordinances of the city of Painesville, which precludes the posting of political signs except during the period extending seventeen days preceding any

primary election, general election, or special election until forty-eight hours after the election, violates the First Amendment to the United States Constitution and is unconstitutional when applied to prohibit the owner of private property from posting on that private property a single political sign outside the durational period set by the ordinance.

{¶ 38} Having so held, we note that courts have provided guidance for drafting sign ordinances designed to address the legitimate governmental interests asserted by the city of Painesville. Thus, in *Whitton*, *supra*, the Eighth Circuit Court of Appeals agreed with the federal district court that first heard the case that " 'regarding both traffic safety and aesthetics, the city could regulate the construction of the signs, amount of signage and the duration of time a temporary political sign can remain before the candidate or committee must remove or replace the sign.' " *Whitton*, 54 F.3d at 1409, citing *Whitton v. Gladstone* (W.D.Mo.1993), 832 F.Supp. 1329, 1335-1336. Similarly in *Waterloo v. Markham,* 234 Ill. App.3d at 747-748, 175 Ill.Dec. at 865, 600 N.E.2d at 1323, the court approved an ordinance limiting a political sign to a maximum posting period before it must be removed or replaced, without reference to the date of an election. See, also, *Brayton v. New Brighton* (Minn.App.1994), 519 N.W.2d 243 (upholding municipal ordinance allowing resident to post one noncommercial opinion sign on private property at any time, and additional noncommercial signs for each candidate and issue during election season).

{¶ 39} We believe that a regulation directed towards signs employing particular types of construction materials deemed likely to lead to production of litter or other aesthetic problems if posted for extended periods of time could be constitutional. Assuming, for example, that a city determines that the life span of a temporary sign made of lightweight wood and cardboard, or of wire frame and plastic, is thirty days, the city's interest in avoiding the unsightliness of deteriorating signs does not justify a thirty-day time limit tied to a specific date. Rather the city's interests could be addressed by requiring removal or replacement of signs constructed of such

materials (whether or not bearing a political message) after thirty days, irrespective of when those thirty days occur, or by requiring removal or replacement of signs fitting within a definition of deteriorating signs set forth in the ordinance, or both.

**{¶ 40}** In light of our finding that the ordinance violates the federal First Amendment rights of the appellees, we need not separately examine the ordinance in light of Section 11, Article I of the Ohio Constitution.

**{¶ 41}** The judgment of the court of appeals finding Section 1135.02(d) to be violative of the First Amendment to the United States Constitution, and thus unconstitutional, is affirmed.

*Judgment affirmed.*

DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____