OPINION
{¶ 1} Appellant John Eichorn appeals the verdict rendered, in the Morrow County Court of Common Pleas, on the basis that he was denied effective assistance of counsel and the jury's verdict is against the manifest weight of the evidence. The following facts give rise to this appeal.
 {¶ 2} On May 20, 2001, nine-year-old Allana Scott went to appellant's residence to play with appellant's granddaughter, Cristal Preston. Appellant approached the girls, while they were playing, and asked them if they would like to look at some magazines. The girls followed appellant, to a detached garage, where he removed three pornographic magazines from a cabinet located in the garage. As the girls were looking at the pictures in the magazines, appellant positioned himself behind them and touched Allana's buttocks.
 {¶ 3} Following this incident, the girls returned to the house where they began playing "beach" in the bathroom. As part of the game, the girls put on their swimsuits and filled the bathtub with water. As they were playing, appellant entered the bathroom and French-kissed his granddaughter. Appellant then attempted to kiss Allana, but she refused explaining she was not permitted to kiss until she was eighteen. Cristal stated it was okay to kiss her grandfather and informed Allana she kissed him all the time like that. Thereafter, appellant grabbed Allana and rubbed her vaginal area on the outside of her swimsuit. Allana resisted the contact and appellant left the bathroom. Later, while the girls were playing in Cristal's bedroom, appellant entered the room and Cristal asked Allana if she wanted to see her suck appellant's "privates." At that point, appellant began to pull down his pants and Allana left the room.
 {¶ 4} When Allana returned home that evening, she informed her parents about the events of the day. Allana's parents immediately called the Morrow County Sheriff's Department. A deputy from the sheriff's department went to Allana's home and took a report. The following morning, Kara Edwards, a caseworker from Morrow County Children Services, went to the elementary school Cristal attended. When questioned by Ms. Edwards, Cristal confirmed the events of the day. Cristal also informed Ms. Edwards that she had been living with her grandparents since the age of five and that appellant had been sexually abusing her since that time. Further, Cristal gave Ms. Edwards a detailed history of both vaginal and anal intercourse, fellatio and cunnilingus. Cristal informed Ms. Edwards about the magazines in the detached garage and also told her that appellant kept a bottle of lotion, in the kitchen, to lubricate his penis.
 {¶ 5} At the same time, Detective Sergeant Paul Mills, of the sheriff's department, executed a search warrant at appellant's residence. Ms. Edwards contacted Detective Mills and told him to look for the bottle of lotion. During the execution of the search warrant, Detective Mills discovered the magazines, bottle of lotion, family computer and a notebook listing several sexually explicit internet sites.
 {¶ 6} Thereafter, Diamond Boggs, of the Ohio Bureau of Criminal Identification and Investigation, analyzed the hard drive of the computer. Mr. Boggs discovered 167 allocated and unallocated computer files containing sexually explicit photographic images. At least forty-seven of the photographic images depicted minor children either in a state of nudity or engaging in sexual conduct and/or sexual activity.
 {¶ 7} In August 2001, the Morrow County Grand Jury indicted appellant on twenty counts of rape, two counts of gross sexual imposition, five counts of disseminating matter harmful to juveniles, twenty counts of pandering obscenity involving a minor, seven counts of pandering sexually oriented material involving a minor and twenty counts of illegal use of a minor in nudity-oriented material. This matter proceeded to a jury trial on July 8, 2002. The trial court dismissed fourteen counts of the indictment following appellant's motion for acquittal.
 {¶ 8} The trial court submitted the remaining sixty counts of the indictment to the jury. Following deliberations, the jury found appellant guilty of eight counts of rape, with force specifications; one count of gross sexual imposition; three counts of disseminating matter harmful to a juvenile; twenty counts of pandering obscenity involving a minor; seven counts of pandering sexually oriented material involving a minor; and twenty counts of illegal use of a minor in nudity-oriented material. The jury found appellant not guilty on the remaining count of gross sexual imposition. The trial court sentenced appellant to life in prison. Following a hearing pursuant to H.B. 180, the trial court found appellant to be a "sexual predator."
 {¶ 9} Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 10} "I. Mr. Eichorn was denied his right to effective assistance of counsel under the Federal and State Constitutions.
 {¶ 11} "II. In violation of due process, the guilty verdicts on the rape and gross sexual imposition charges were entered against the manifest weight of the evidence."
 I {¶ 12} In his First Assignment of Error, appellant contends he was denied his right to effective assistance of counsel. We disagree.
 {¶ 13} In support of this assignment of error, appellant first maintains defense counsel was ineffective because he failed to challenge the constitutionality of the pandering obscenity involving a minor[1], pandering sexually oriented material involving a minor[2] and illegal use of a minor in nudity-oriented material[3] statutes. Appellant claims these statutes are unconstitutional pursuant to the United States Supreme Court's decision in Ashcroft v. The Free Speech Coalition
(2002), 122 S.Ct. 1389. Appellant also claims defense counsel was ineffective because he failed to request that the pandering obscenity involving a minor, pandering sexually oriented material involving a minor and illegal use of a minor in nudity-oriented material counts be severed from the counts of rape and gross sexual imposition.
 {¶ 14} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364;Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136.
 {¶ 15} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any give case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 16} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545, 558, citing Lockhart at 370. It is based upon this standard that we review appellant's First Assignment of Error.
"A. Constitutionality of Statutes"
 {¶ 17} Appellant claims R.C. 2907.321(A)(5), 2907.322(A)(5) and2907.323(A)(3) are unconstitutional as a result of the United States Supreme Court's decision in Ashcroft v. The Free Speech Coalition, supra. The Ashcroft case addressed the constitutionality of the Child Pornography Prevention Act of 1996 ("CPPA"). The CPPA expanded the federal prohibition on child pornography to include not only pornographic images made using actual children, but also "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture," that "is, or appears to be, of a minor engaging in sexually explicit conduct," and any sexually explicit image that is "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" it depicts "a minor engaging in sexually explicit conduct". Id. at 1392-1393.
 {¶ 18} The United States Supreme Court found certain provisions of the CPPA overbroad and unconstitutional. Id. at 1393. The CPPA prohibited images so long as the persons appeared to be under eighteen years of age. Id. at 1400. Thus, the Court found the CPPA prohibited speech that recorded no crime and created no victims by its production. Id. at 1402.
 {¶ 19} The Court further concluded certain provisions of the CPPA were inconsistent with previous rulings of the Court. Specifically, inMiller v. California (1973), 413 U.S. 15, the Court held that pornography is obscene when the government can prove that the work in question, taken as a whole, appeals to the prurient interest, is patently offensive in light of community standards, and lacks serious literary, artistic, political, or scientific value. Id. at 24. However, under the CPPA, materials need not appeal to the prurient interest, which proscribes any depiction of sexually explicit activity, no matter how it is presented. Id. at 1393.
 {¶ 20} The Court also concluded the CPPA was inconsistent with its ruling in York v. Ferber (1982), 458 U.S. 747. In Ferber, the Court upheld a prohibition on the distribution and sale of child pornography, as well as its production, because these acts were "intrinsically related" to the sexual abuse of children in two ways. Id. at 759. First, as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Id. Second, because the traffic in child pornography was an economic motive for its production, the state had an interest in closing the distribution network. Id. at 760.
 {¶ 21} Appellant claims the statutes under consideration are similar to certain sections of the CPPA and therefore, defense counsel should have argued the statutes are constitutionally overbroad and violate the First Amendment. A law may be unconstitutionally overbroad, "* * * if in its reach it prohibits constitutionally protected conduct."State v. Woodbridge, Mahoning App. No. 02 CA 60, 2003-Ohio-2931, at ¶ 14, citing Akron v. Rowland, 67 Ohio St.3d 374, 387,1993-Ohio-222. Laws regulating or potentially regulating the exercise of constitutional rights must be narrowly tailored to address the specific legislative concern. Id., citing Painesville Bldg. Dept. v. Dworken Bernstein Co., L.P.A., 89 Ohio St.3d 564, 568, 2000-Ohio-488. A statute is narrowly tailored if it targets and eliminates no more than the exact source of the wrong it seeks to remedy. Id., citing State v.Burnett, 93 Ohio St.3d 419, 429, 2001-Ohio-1581, citing Frisby v.Schultz (1988), 487 U.S. 474, 485. Accordingly, the overbreadth doctrine provides the breathing space that, "* * * First Amendment freedoms need * * * to survive." Id., citing Natl. Assn. for the Advancement of ColoredPeople v. Button (1963), 371 U.S. 415, 433.
 {¶ 22} A party claiming that a piece of legislation is facially overbroad must demonstrate that it can be regularly and improperly applied to prohibit protected expression and activity. Id. at ¶ 15, citing Houston v. Hill (1987), 482 U.S. 451, 458. Even where criminal statutes have a legitimate application they will be deemed facially overbroad where they render, "* * * unlawful a substantial amount of constitutionally protected conduct." Id., citing Houston at 459.
 {¶ 23} We begin our analysis with the basic premise that acts of the General Assembly enjoy a strong presumption of constitutionality.State v. Gill (1992), 63 Ohio St.3d 53, 55. Having reviewed the statutes at issue, in the case sub judice, and the Ashcroft decision, we conclude said statutes are not overbroad and therefore, do not violate the First Amendment. Therefore, defense counsel was not ineffective for failing to raise this issue at the trial court level.
 {¶ 24} The main distinction between the CPPA and the statutes under consideration is that the CPPA sought to prohibit virtual child pornography, that is, materials that appear to depict minors but were produced by means other than using real children. The statutes appellant challenges only prohibit materials produced by the use of real children and permit the trier of fact to infer that the person depicted in the material is in fact a minor if through the material's title, text, visual representation, or otherwise, the material represents or depicts the person as a minor. The state laws appellant challenges do not prohibit virtual child pornography, only pornography produced by the use of real children.
 {¶ 25} Accordingly, because the statutes under consideration do not seek to prohibit virtual child pornography, we find the statutes are not overbroad. Therefore, defense counsel was not ineffective for failing to raise this argument.
"B. Severance of Counts"
 {¶ 26} In his second argument, under his First Assignment of Error, appellant contends defense counsel was ineffective for failing to move to sever the counts of pandering obscenity involving a minor, pandering sexually oriented material involving a minor and illegal use of a minor in nudity-oriented material from the counts of rape and gross sexual imposition.
 {¶ 27} Pursuant to Crim.R. 8(A), offenses may be joined if they are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct. When a defendant claims that he was prejudiced by joinder by multiple offenses, the court must determine: (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct. State v. Schaim, 65 Ohio St.3d 51, 59,1992-Ohio-31. If the evidence of other crimes would be admissible at separate trials, any prejudice that might result from the jury hearing the evidence of the other crime in a joint trial would be no different from that possible in separate trials. Id.
 {¶ 28} R.C. 2945.59, which addresses proof of a defendant's motive, provides as follows:
 {¶ 29} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system may be proved, whether they are contemporaneous with or prior or subsequent thereto, not withstanding that such proof may tend to show the commission of another crime by the defendant."
 {¶ 30} Appellant maintains defense counsel should have requested severance of these counts because the jury viewed sixty-three pictures of youthful looking actors who are either nude, or partially nude, engaged in sexual activity. Appellant claims the jury used these exhibits in finding him guilty of rape and gross sexual imposition. Appellant also contends the testimony of Cristal and Allana would not have been admissible to prove he committed the offense of pandering obscenity involving a minor, pandering sexually oriented material involving a minor and illegal use of a minor in nudity-oriented material because neither girl testified that she had viewed these pictures.
 {¶ 31} Finally, appellant maintains defense counsel should have requested severance of the counts because the evidence was overwhelming and confusing which resulted in the jury convicting appellant of the wrong count of gross sexual imposition. The jury convicted appellant of count twenty-one of the indictment, which involved his touching of Allana's buttocks in the garage. Appellant argues Allana testified, at trial, that appellant touched her buttocks by accident. However, both Allana and Cristal testified, as to count twenty-two of the indictment, that appellant touched Allana's private parts while in the bathroom with the girls. Thus, appellant maintains the jury should have convicted him of count twenty-two and not count twenty-one.
 {¶ 32} We conclude, pursuant to R.C. 2945.59, that defense counsel was not ineffective for failing to request severance of the counts. The exhibits submitted to the jury are graphic and arguably prejudicial. However, we find the admission of this evidence to be harmless error due to the overwhelming evidence, in the record, establishing that appellant repeatedly raped his granddaughter.
 {¶ 33} As to the sex offense charges, the computer evidence would be admissible to show appellant's motive, intent, scheme or plan in committing the sexual abuse against his granddaughter and her friend. This is based upon the fact that the exhibits admitted into evidence clearly established they were gathered and viewed by someone interested in child pornography.
 {¶ 34} As to the obscenity-related charges, the testimony of appellant's granddaughter and her friend would have been admissible to prove the identity of the person viewing the child pornography. This testimony was relevant since appellant was accused of performing the same type of sexual behavior displayed in the exhibits.
 {¶ 35} Finally, we will not second-guess the jury's decision to find appellant guilty of count twenty-one of the indictment instead of count twenty-two. The jury heard the testimony of the children and it was within the jury's province to make this determination since the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. Bechtol v. Bechtol (1990), 49 Ohio St.3d 21, 23.
 {¶ 36} Therefore, we conclude counsel's performance did not fall below an objective standard of reasonable representation involving a substantial violation of any of his essential duties.
 {¶ 37} Appellant's First Assignment of Error is overruled.
 II {¶ 38} In his Second Assignment of Error, appellant maintains his convictions for rape and gross sexual imposition are against the manifest weight of the evidence. We disagree.
 {¶ 39} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 40} Appellant contends his conviction for gross sexual imposition is against the manifest weight of the evidence because he was convicted under count twenty-one of the indictment, which dealt with an incident in the garage where he allegedly touched Allana's buttocks. Appellant claims Allana testified that he accidentally touched her buttocks and Cristal testified that he did not touch Allana's buttocks. The record indicates Allana testified as follows concerning appellant's touching of her buttocks:
 {¶ 41} "Q. You say he was standing behind you?
 {¶ 42} "A. Yes.
 {¶ 43} "Q. Did he do anything to you at that time?
 {¶ 44} "A. He tried to touch my butt. I like went to the other side of the table.
 {¶ 45} "Q. When you say tried to touch your butt what did he actually do?
 {¶ 46} "A. He tried to like take his hand and put it on my butt.
 {¶ 47} "Q. Did he actually touch your butt?
 {¶ 48} "A. Yes.
 {¶ 49} "Q. With his hand?
 {¶ 50} "A. Yes." Tr. Vol. I at 280.
 {¶ 51} Further, on cross-examination, Allana testified as follows concerning the touching:
 {¶ 52} "Q. What happens as you are looking at these magazines?
 {¶ 53} "A. He tries to touch my butt.
 {¶ 54} "Q. When you say he tries, how does he do that?
 {¶ 55} "A. He puts his hand on.
 {¶ 56} "Q. Did he actually put his hand on your butt?
 {¶ 57} "A. Yeah and I moved over to the other side.
 {¶ 58} "* * *
 {¶ 59} "Q. Okay. Do you think he did it on purpose or was it by accident?
 {¶ 60} "A. I don't know." Id. at 322.
 {¶ 61} On re-direct, Allana again indicated that she was not sure whether the touching of her buttocks, by appellant, was accidental. Id. at 345.
 {¶ 62} Clearly, Allana's testimony indicates that a touching occurred. However, an issue existed as to whether it was accidental. It is the duty of the jury to consider the credibility of the witnesses and resolve conflicts in the evidence. We do not find the jury lost its way in doing so thereby requiring a reversal of appellant's conviction for gross sexual imposition and a new trial.
 {¶ 63} Appellant also claims his convictions for rape are against the manifest weight of the evidence because the evidence establishes Cristal viewed pornographic magazines and Gail Hornor testified that a child can give a detailed history of sexual activity if the child is abused, viewed pornography or observed sexual activity between adults. Appellant also refers to Cristal's testimony where she admitted that her cousin laid on top of her and they had engaged in oral sex. Again, we have reviewed Cristal's testimony as to the rape charges and conclude the jury did not lose its way in resolving conflicts in the evidence. The record supports appellant's convictions for rape.
 {¶ 64} Appellant's Second Assignment of Error is overruled.
 {¶ 65} For the foregoing reasons, the judgment of the Court of Common Pleas, Morrow County, Ohio, is hereby affirmed.
Farmer, P.J., and Boggins, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Morrow County, Ohio, is affirmed. Costs assessed to Appellant.
[1] R.C. 2907.321(A)(5) provides as follows:
"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
"* * *
"(5) Buy, procure, possess, or control any obscene material, that has a minor as one of its participants;"
[2] R.C. 2907.322(A)(5) provides as follows:
"(A) No person, with knowledge of the character of the material or performance involved, shall do any of the following:
"* * *
"(5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality;"
[3] R.C. 2907.323(A)(3) provides as follows:
"(A) No person shall do any of the following:
"* * *
"(3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies:
"(a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance.
"(b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or use of the minor in a state of nudity and to the manner in which the material or performance is used or transferred."