The STATE of Ohio, Appellee,

v.

CORNWELL, Appellant.

[Cite as *State v. Cornwell,* 149 Ohio App.3d 212, 2002-Ohio-5178.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 00–C.A.–223.

Decided Sept. 23, 2002.

Dionne Almasy, Youngstown City Prosecutor, and Anthony J. Farris, Chief Assistant Prosecutor, for appellee.

Samuel G. Amendolara, for appellant.

WAITE, Judge.

{¶ 1} This timely appeal arises from the conviction of Sean Cornwell, appellant, in Youngstown Municipal Court for violating a loud-music ordinance. Appellant argues on appeal that the ordinance is unconstitutionally vague and overbroad and violates the First Amendment. For the following reasons, we overrule appellant's assignment of error and affirm the judgment of the trial court.

{¶ 2} On June 2, 2000, appellant was cited for a violation of former Youngstown Municipal Ordinance ("Ord.") 539.07(b)(1). This ordinance has since been

substantially amended, but at the time appellant was cited the ordinance stated as follows:

{¶ 3} "No person shall play any radio, music player or an audio system in a motor vehicle at such volume as to disturb the quiet, comfort or repose of other persons or at a volume which is plainly audible to persons other than the occupants of said vehicle."

{¶ 4} On September 25, 2000, appellant's counsel made an oral motion to dismiss the charge on constitutional grounds. The court denied the motion, and appellant immediately entered into a Crim.R. 11 plea agreement. Appellant pleaded no contest to the charge. The court determined that this was appellant's fourth offense for the same crime, and sentenced him to 60 days in jail and a $600 fine. Appellant filed this timely appeal on October 17, 2000.

{¶ 5} Appellant presents a single assignment of error for our review:

{¶ 6} "The trial court erred by entering judgment against appellant since Section 539.07 of the Youngstown Municipal Ordinances is unconstitutional pursuant to the First, Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

{¶ 7} Appellant raises three issues regarding the constitutionality of Ord. 539.07(b)(1). We begin our review by noting that all "legislation enjoys a presumption of constitutionality." *State v. Thompson* (2001), 92 Ohio St.3d 584, 586, 752 N.E.2d 276. Any doubts about the constitutionality of a statute should be resolved in favor of a construction that upholds its validity. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 446 N.E.2d 449.

{¶ 8} Ord. 539.07(b)(1) contains two distinct limitations on the sound level of audio equipment in an automobile. The first provision prohibits maintaining the audio system in a car "at such a volume as to disturb the quiet, comfort or repose of other persons." The second provision prohibits using the audio system "at a volume which is plainly audible to persons other than the occupants of said vehicle." Appellant was charged with playing "loud and disturbing music from an automobile" in violation of Ord. 539.07(b)(1). This charge encompasses both provisions of Ord. 539.07(b)(1). Appellant focuses exclusively on the phrase "plainly audible" in the second part of Ord. 539.07(b)(1). Based on the record, it appears that the trial court was justified in convicting appellant under the first provision found in Ord. 539.07(b)(1). Since we determine that the first part of Ord. 539.07(b)(1) is constitutionally sound and provides ample justification for appellant's conviction, it is not necessary for us to consider the constitutionality of the second part of the ordinance in this appeal.

{¶ 9} The record plainly reflects that appellant pleaded no contest to the loud-music violation. A plea of no contest is an admission of the facts set forth in

the complaint or indictment. *State v. Bird* (1998), 81 Ohio St.3d 582, 584, 692 N.E.2d 1013. Therefore, appellant admitted that he was playing loud and disturbing music in and from his automobile so as to violate Ord. 539.07(b)(1).

{¶ 10} Appellant's first argument asserts that the loud-music ordinance is impermissibly vague. "[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. Rockford* (1972), 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222.

{¶ 11} "Under the vagueness doctrine, which is premised on the Fourteenth Amendment due-process requirement that a 'law give fair notice of offending conduct,' a statute is void for vagueness if it ' "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" * * * [or if] it encourages arbitrary and erratic arrests and convictions.' *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115–116 (quoting *United States v. Harriss* [1954], 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989)." *Cincinnati v. Thompson* (1994), 96 Ohio App.3d 7, 24, 643 N.E.2d 1157.

{¶ 12} In *Dorso,* supra, the Ohio Supreme Court was faced with a "void for vagueness" challenge of a Cincinnati noise ordinance. The court was asked to determine whether the phrase "to disturb the peace and quiet" was so subjective and dependent on the personal sensitivities of the listener that, essentially, the ordinance provided no measurable standard of conduct. 4 Ohio St.3d at 63, 4 OBR 150, 446 N.E.2d 449.

{¶ 13} The *Dorso* court stated:

{¶ 14} "[W]e construe the Cincinnati ordinance at issue to prohibit the playing of music, amplification of sound, etc., in a manner which could be anticipated to offend the reasonable person, *i.e.,* the individual of common sensibilities. Specifically, we find the ordinance to proscribe the transmission of sounds which disrupt the reasonable conduct of basic human activities, *e.g.,* conversation or sleep. Our construction of the ordinance does not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive. Thus, the standard hereby adopted vitiates the claimed vagueness of the ordinance." Id. at 63–64, 4 OBR 150, 446 N.E.2d 449.

{¶ 15} Many other courts have held that noise statutes that are based on the "reasonable person" standard are sufficiently clear to withstand a "void for vagueness" challenge. *Kovacs v. Cooper* (1949), 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513; *Kelleys Island v. Joyce* (2001), 146 Ohio App.3d 92, 765 N.E.2d 387; *Edison v. Jenkins* (June 7, 2000), 5th Dist. No. CA893, 2000 WL 873692; *State v. Boggs* (June 25, 1999), 1st Dist. No. C–980640, 1999 WL 420108; *State v. Linares* (1995), 232 Conn. 345, 655 A.2d 737; *Price v. State* (Ind.1993), 622 N.E.2d 954;

*Beaufort v. Baker* (1993), 315 S.C. 146, 432 S.E.2d 470; *Madison v. Baumann* (1991), 162 Wis.2d 660, 470 N.W.2d 296.

{¶ 16} Additionally, the fact that Ord. 539.07(b)(1) does not define the phrase "disturb the quiet, comfort, or repose" does not render the ordinance impermissibly vague. This phrase is substantially synonymous with "disturbing the peace." Statutes that prohibit "disturbing the peace" are construed, if possible, to apply only to conduct that is actually intended to create a disturbance and to exclude conduct that would only be disturbing to an unduly sensitive person. *Dorso,* 4 Ohio St.3d at 64, 4 OBR 150, 446 N.E.2d 449.

{¶ 17} " 'The ter[m] "disturb the peace" * * * [has] long been understood to mean disruption of public order by acts that are themselves violent or that tend to incite others to violence. Thus, one may be guilty of disturbing the peace * * * if he engages in "tumultuous" conduct, *i.e.,* violent conduct that * * * endangers public safety or order. He may also be guilty of disturbing the peace through "offensive" conduct if by his actions he * * * incites others to violence or engages in conduct likely to incite others to violence.' " *State v. Starsky* (1970), 106 Ariz. 329, 331, 475 P.2d 943, quoting *In re Bushman* (1970), 1 Cal.3d 767, 773, 83 Cal.Rptr. 375, 463 P.2d 727.

{¶ 18} The offense of "disturbing the peace" has been understood, from its common-law origin up to the present, to include a wide variety of conduct that destroys or threatens public order and tranquility. *United States v. Woodard* (C.A.7, 1967), 376 F.2d 136, 141. Whether conduct is deemed to "disturb the peace" is measured by the reasonableness of the conduct as viewed in the light·of the surrounding facts and circumstances. Id.; *Dorso,* 4 Ohio St.3d at 64, 4 OBR 150, 446 N.E.2d 449.

{¶ 19} There seems to be no significant difference between part one of Ord. 539.07(b)(1) and the statute that was upheld in *Dorso.* Therefore, for the reasons set forth in *Dorso,* appellant's "void-for-vagueness" argument is rejected.

■ {¶ 20} Appellant's second argument is that the statute is unconstitutionally overbroad on its face. The overbreadth doctrine is a very narrow concept applied only where First Amendment rights are at stake. *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 528, 709 N.E.2d 1148.

{¶ 21} "A court may strike down an overly broad government enactment in its entirety, even if the party before the court has not engaged in activities protected by the First Amendment, ' "if in its reach it prohibits constitutionally protected conduct." ' *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 528, 709 N.E.2d 1148, quoting *Grayned v. Rockford* (1972), 408 U.S. 104, 114, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222, 231. The [overbreadth] doctrine allows such challenges because if an overly broad enactment is left in place, other persons may

refrain from exercising their constitutionally protected rights for fear of criminal sanctions. *Village of Schaumburg v. Citizens for a Better Environment* (1980), 444 U.S. 620, 634, 100 S.Ct. 826, 835, 63 L.Ed.2d 73, 85–86. Overbreadth, however, is 'manifestly strong medicine' that is employed 'sparingly, and only as a last resort.' *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 613, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 841." *Junction 615, Inc. v. Ohio Liquor Control Comm.* (1999), 135 Ohio App.3d 33, 41–42, 732 N.E.2d 1025.

{¶ 22} Appellant's overbreadth argument of necessity involves a discussion of the Free Speech Clauses of both the First Amendment to United States Constitution and Section 11, Article I of the Ohio Constitution. The Ohio Supreme Court has held that "the free speech guarantees accorded by the Ohio Constitution are no broader than the First Amendment, and that the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution." *Eastwood Mall, Inc. v. Slanco* (1994), 68 Ohio St.3d 221, 222, 626 N.E.2d 59, citing *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 362–363, 588 N.E.2d 116. Therefore, appellant's argument should be viewed primarily through case law dealing with the First Amendment to the United States Constitution.

{¶ 23} "Music, as a form of expression and communication, is protected under the First Amendment [to the United States Constitution]." *Ward v. Rock Against Racism* (1989), 491 U.S. 781, 790, 109 S.Ct. 2746, 105 L.Ed.2d 661. Because Ord. 539.07(b)(1) implicates appellant's First Amendment rights, the ordinance, as applied to appellant, must meet the demands of the First Amendment, which states:

{¶ 24} "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

{¶ 25} An ordinance may be facially invalid "either because it is unconstitutional in every conceivable application, or because it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally 'overbroad.' " *Members of City Council of Los Angeles v. Taxpayers for Vincent* (1984), 466 U.S. 789, 796, 104 S.Ct. 2118, 80 L.Ed.2d 772.

{¶ 26} The parties in this case do not dispute that the city of Youngstown has an interest in protecting its citizens from unwelcome noise. Cf. *Dorso, supra,* 4 Ohio St.3d at 64, 4 OBR 150, 446 N.E.2d 449. Municipal authority to regulate noise has been specifically granted by statute. R.C. 715.49(A) states:

{¶ 27} "(A) *Any municipal corporation may prevent* riot, gambling, *noise* and disturbance, and indecent and disorderly conduct or assemblages, preserve

the peace and good order, and protect the property of the municipal corporation and its inhabitants." (Emphasis added.)

{¶ 28} Ord. 539.07(b)(1) attempts to control noise emanating from automobile radios, music players, and audio systems. Some radio noises have nothing to do with protected speech, e.g., the buzzing sound of static from a radio that is not properly tuned to a station. Therefore, as Ord. 539.07(b)(1) may unquestionably prohibit the broadcasting of some loud radio noises without infringing on constitutional rights, the ordinance is not facially invalid in all circumstances.

{¶ 29} Appellant nevertheless contends that Ord. 539.07(b)(1) restricts a significant amount of constitutionally protected speech. It is apparent, however, that Ord. 539.07(b)(1) is not primarily directed at the content of the speech but at the volume of the noise coming from automobile audio systems. The ordinance's prescription against loud noises is primarily an attempt to control conduct, i.e., the use of the volume control, rather than an attempt to control the type of speech being broadcast. See *Dorso,* 4 Ohio St.3d at 64, 4 OBR 150, 446 N.E.2d 449. "Where conduct and not merely speech is involved, * * * the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma* (1973), 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830.

{¶ 30} A party making an overbreadth challenge must show that there is "a realistic danger that the ordinance will significantly compromise recognized First Amendment protections of individuals not before the Court." Id. Furthermore, those who challenge the constitutionality of a statute on the basis that it is substantially overbroad must identify "any significant difference between their claim that the ordinance is invalid on overbreadth grounds and their claim that it is unconstitutional when applied." *Taxpayers for Vincent,* 466 U.S. at 802, 104 S.Ct. 2118, 80 L.Ed.2d 772. In other words, the party making the overbreadth challenge must demonstrate that there are significant issues to be resolved that are separate and distinct from those raised by the facts of the case. Appellant has not shown that the rights of hypothetical third parties are affected by Ord. 539.07(b)(1) any differently than his own rights have been affected. The ordinance does somewhat affect his right to play music, which right is protected by the First Amendment. *Rock Against Racism,* 491 U.S. at 790, 109 S.Ct. 2746, 105 L.Ed.2d 661. The ordinance does not, however, fully restrict that right, and appellant does not suggest how Ord. 539.07(b)(1) affects any other person or group any differently than it affects him. Appellant's overbreadth allegation raises no additional issues to be resolved beyond those relating to the constitutionality of the statute as applied to facts of his own case. Therefore, appellant may not maintain an overbreadth challenge. See *Howard Opera House Assoc. v. Urban Outfitters, Inc.* (D.Vt.2001), 131 F.Supp.2d 559, 564.

{¶ 31} In appellant's third argument, he contends that Ord. 539.07(b)(1) was applied in a selective and discriminatory manner. Selective prosecution violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution when it is " 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Cleveland v. Trzebuckowski* (1999), 85 Ohio St.3d 524, 530, 709 N.E.2d 1148, quoting *Oyler v. Boles* (1962), 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446. Appellant completely bases his argument, however, on factual assertions that are not part of the record. It is well settled that constitutional decisions should not be made "until the necessity for a decision arises on the record before the court." *Hal Artz Lincoln–Mercury, Inc. v. Ford Motor Co.* (1986), 28 Ohio St.3d 20, 28, 28 OBR 83, 502 N.E.2d 590, fn. 17. Therefore, appellant's third argument is without merit.

{¶ 32} Normally, this court's analysis would end here because appellant has not alleged any other errors. Curiously, appellant has neglected to argue that Ord. 539.07(b)(1) violates his own First Amendment rights as applied to the facts of this case. Appellant may have assumed that he was also raising his own constitutional rights within his second argument as to the alleged "overbreadth of the evidence." The very purpose, though, of an overbreadth claim is to address the rights of hypothetical third parties who are not before the court. In order to completely resolve this matter, we must address whether Ord. 539.07(b)(1), part one, violates the First Amendment as applied to the facts of this case.

{¶ 33} Appellant does not attempt to challenge his no contest plea. Given the procedural history of this case and the relevant case law, we must assume that he did, in fact, play loud music from his car so as to disturb the quiet, comfort, and repose of others. The issue, then, is whether a municipality may legitimately regulate the type of activity described in Ord. 539.07(b)(1) (which appellant has admitted to) without violating the First Amendment.

{¶ 34} A municipality "may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are 'justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.' " *Rock Against Racism*, 491 U.S. at 791, 109 S.Ct. 2746, 105 L.Ed.2d 661; see, also, *Painesville Bldg. Dept. v. Dworken & Bernstein Co., L.P.A.* (2000), 89 Ohio St.3d 564, 567, 733 N.E.2d 1152.

{¶ 35} "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Rock Against Racism*, 491 U.S. at 791, 109 S.Ct. at 2754, 105 L.Ed.2d at 675. A statute that interferes with protected speech is content neutral so long as it is "justified without reference to the content of the

regulated speech." *Clark v. Community for Creative Non–Violence* (1984), 468 U.S. 288, 293, 104 S.Ct. 3065, 82 L.Ed.2d 221. "The principal inquiry * * * is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Rock Against Racism,* 491 U.S. at 791, 109 S.Ct. 2746, 105 L.Ed.2d 661.

{¶ 36} Appellee has argued that it has an interest in protecting its citizens from aberrant and unwelcome noise. It has repeatedly been held that this interest is a content-neutral justification for laws that regulate the time, place, or manner of protected speech. Id. at 792, 109 S.Ct. 2746, 105 L.Ed.2d 661; *Boos v. Barry* (1988), 485 U.S. 312, 320, 108 S.Ct. 1157, 99 L.Ed.2d 333; *Dorso,* 4 Ohio St.3d at 64, 4 OBR 150, 446 N.E.2d 449. Furthermore, Ord. 539.07(b)(1), part one, regulates the use of audio *equipment,* i.e., radios, cassette players, compact disk players, etc., rather than regulating the type of sound or speech being broadcast by that equipment. Therefore, Ord. 539.07(b)(1), part one, satisfies the content-neutral requirement.

{¶ 37} A time, place, or manner regulation must also be narrowly tailored to serve a significant governmental interest. Once again, appellee has identified its significant interest: it seeks to protect its citizens against unwelcome noise. A municipality has " 'a substantial interest in protecting its citizens from unwelcome noise.' * * * [T]he government may act to protect even such traditional public forums as city streets and parks from excessive noise." *Rock Against Racism,* supra, 491 U.S. at 796, 109 S.Ct. 2746, 105 L.Ed.2d 661, quoting *Taxpayers for Vincent,* 466 U.S. at 806, 104 S.Ct. 2118, 80 L.Ed.2d 772.

{¶ 38} A time, place, or manner regulation is narrowly tailored to serve a governmental interest, " 'so long as the * * * regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.' " Id. at 799, 109 S.Ct. 2746, 105 L.Ed.2d 661, quoting *United States v. Albertini* (1985), 472 U.S. 675, 689, 105 S.Ct. 2897, 86 L.Ed.2d 536. Narrow tailoring, in the context of time, place, or manner restrictions, "need not be the least restrictive or least intrusive means" of achieving the government's intended result. Id. at 798, 109 S.Ct. 2746, 105 L.Ed.2d 661.

{¶ 39} "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative. 'The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." Id. at 800, 109 S.Ct. 2746, 105 L.Ed.2d 661, quoting *Albertini,* 472 U.S. at 689, 105 S.Ct. 2897, 86 L.Ed.2d 536.

{¶ 40} Appellee chose to control excess noise by prohibiting the use of car radios "at such volume as to disturb the quiet, comfort or repose of other persons." As stated earlier, the phrase "disturb the quiet, comfort or repose" has a longstanding and well-defined meaning and is based on an objective "reasonable person" standard. Appellee's interest in protecting its citizens from unwelcome noise is obviously served by part one of Ord. 539.07(b)(1). Part one of the ordinance infringes on protected speech only when it is broadcast at such a volume as to cause or incite a breach of the peace. Although as a court we may have chosen a different method to control excessive and unwelcome noise, we must defer to appellee's determination as to how its interests will best be served so long as it is reasonable. *Rock Against Racism*, 491 U.S. at 800, 109 S.Ct. 2746, 105 L.Ed.2d 661.

{¶ 41} Finally, a time, place, or manner regulation must leave open ample alternative channels for communication of the information. Ord. 539.07(b)(1), part one, is not a complete ban on playing music from automobiles. It permits music to be played at any volume that does not disturb the peace of others, i.e., that does not cause or tend to incite a breach of the peace. Appellant had ample opportunity to play music from his car, albeit at a volume lower than that which would cause a disturbance of the peace. Furthermore, in respect to part one of Ord. 539.07(b)(1), appellant made no attempt to show that any of the alternate avenues of communication were inadequate. See *Taxpayers for Vincent*, supra, 466 U.S. at 812, 104 S.Ct. 2118, 80 L.Ed.2d 772. Therefore, the third requirement necessary to uphold a time, place, or manner regulation of speech has been fulfilled.

{¶ 42} For all of the aforementioned reasons, we overrule appellant's sole assignment of error and affirm the judgment of the lower court.

Judgment affirmed.

VUKOVICH, P.J., concurs.

GENE DONOFRIO, J., dissents.

GENE DONOFRIO, Judge, dissenting.

{¶ 43} I must respectfully dissent from the majority opinion herein. On June 2, 2000, appellant was cited for violating Youngstown Municipal Ordinance 539.07(b), the city's "loud music" ordinance. Appellant moved to dismiss the charge on constitutional grounds. The trial court denied the motion. On September 25, 2000, appellant entered a plea of no contest, and the court found him guilty. Since this was appellant's fourth conviction for violating the ordinance, the court sentenced him to 60 days in jail and a fine of $600. The court

stayed appellant's sentence pending this appeal. Appellant filed his notice of appeal on October 17, 2000.

{¶ 44} Appellant alleges a single assignment of error but makes three separate arguments in support. His assignment of error states:

{¶ 45} "The trial court erred by entering judgment against appellant since Section 539.07 of the Youngstown Municipal Ordinances is unconstitutional pursuant to the First, Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

{¶ 46} Youngstown Municipal Ordinance 539.07(b)(1), under which appellant was convicted, states:

{¶ 47} "No person shall play any radio, music player or an audio system in a motor vehicle at such volume as to disturb the quiet, comfort or repose of other persons or at a volume which is plainly audible to persons other than the occupants of said vehicle."[1]

{¶ 48} All legislative enactments enjoy a presumption of constitutionality. *State v. Anderson* (1991), 57 Ohio St.3d 168, 171, 566 N.E.2d 1224, *Benevolent Assn. v. Parma* (1980), 61 Ohio St.2d 375, 377, 15 O.O.3d 450, 402 N.E.2d 519. Furthermore, courts must apply all presumptions and pertinent rules of construction to uphold, if at all possible, a statute or ordinance alleged to be unconstitutional. *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 330 N.E.2d 896.

{¶ 49} Appellant's first argument in support of his claim that the ordinance is unconstitutional states:

{¶ 50} "Section 539.07 of the Youngstown City Code is void for vagueness in that it does not sufficiently describe conduct so the defendant cannot objectively determine what action violates the ordinance's provision."

---

1. {¶ a}  The ordinance was amended on February 7, 2001. Section (b) now reads:

{¶ b}  "(1) No person operating or occupying a motor vehicle upon any public road, street, highway or private property shall operate or permit the operation of any sound amplification system from within the vehicle so as to disturb the quiet, comfort or repose of other persons, or at a volume that is plainly audible from outside of the vehicle.

{¶ c}  "(2) 'Sound amplification system' means any radio, tape player, compact disc, loudspeaker, speaker or other electronic device used for the amplification of musical instruments or other sounds.

{¶ d}  "(3) 'Plainly audible' means any sound produced by a sound amplification system from within the vehicle that can clearly be heard outside the vehicle at a distance of fifty feet or more. Measurement standards shall be by the auditory senses, based upon direct line of sight. Words or phrases need not be discernable and bass reverberations are included. The motor vehicle may be parked, stopped, standing or moving.

{¶ e}  "(4) Warning and/or emergency devices used to call police or signal hazardous conditions, or other sound systems that are used in compliance with proper authorization by the City are exempted from this section."

{¶ 51}  Appellant argues that the ordinance in question is unconstitutionally vague.  Specifically he asserts that the phrase "plainly audible" is capable of creating substantial confusion.  Appellant quotes the definitions of "plainly" and "audible" from the American Heritage Dictionary.  It defines the terms as "easily understood; clearly evident; uncomplicated; straightforward" and "capable of being heard," respectively.  Appellant argues that construing the ordinance in terms of these definitions would lead one to believe that the ordinance prohibits all noise that is "plainly audible," including sirens from emergency vehicles.  Appellant also argues that the ordinance provides the police with unfettered discretion in choosing whom to cite under the ordinance, since it does not specifically describe the conduct prohibited.

{¶ 52}  The United States Supreme Court has stated that " 'the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.' "  *State v. Tanner* (1984), 15 Ohio St.3d 1, 3, 15 OBR 1, 472 N.E.2d 689, quoting *Kolender v. Lawson* (1983), 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903.  Tanner adopted a tripartite analysis to determine whether a statute or ordinance is void for vagueness.  Under the analysis, a court must consider whether the ordinance (1) provides fair warning to the ordinary citizen so he may comport his behavior with the dictates of the ordinance, (2) precludes arbitrary, capricious, and generally discriminatory enforcement by officials given too much authority and too few constraints, and (3) ensures that fundamental constitutionally protected freedoms are not unreasonably impinged on or inhibited.  Id., citing *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 33 L.Ed.2d 222.

{¶ 53}  An ordinance is not necessarily void for vagueness merely because it could have been worded more precisely.  *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 446 N.E.2d 449.  The Constitution does not mandate a burdensome specificity.  Id. at 62, 4 OBR 150, 446 N.E.2d 449.  As the United States Supreme Court observed in *Rose v. Locke* (1975), 423 U.S. 48, 49–50, 96 S.Ct. 243, 46 L.Ed.2d 185, the "prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision.  Many statutes will have some inherent vagueness, for '[i]n most English words and phrases there lurk uncertainties.'  *Robinson v. United States* [1945], 324 U.S. 282, 286 [65 S.Ct. 666, 89 L.Ed. 944]."

{¶ 54}  A statute or ordinance need not define every word it uses.  *Dorso*, 4 Ohio St.3d at 62, 4 OBR 150, 446 N.E.2d 449.  Terms that are undefined by the statute or ordinance are to be given their common, everyday meaning.  Id.

Webster's II New Riverside Dictionary defines "plain" as "clearly evident: easily understood." It defines "audible" as "capable of being heard."

{¶ 55} Applying the above standards and definitions to the ordinance at issue, it is apparent that the ordinance does not meet the test set out in *Tanner*. As to the first part of the analysis, the ordinance does not provide fair warning to ordinary citizens as to what volume on their car stereo constitutes criminal behavior. The common definitions of "plainly" and "audible" suggest that something is "plainly audible" if it is easily heard. This definition is wholly subjective. The ordinance makes no attempt to define the term "plainly audible." It contains no requirements for distance or any other type of standard by which noise is to be measured. Furthermore, the ordinance fails to give guidance on such details as whether words must be discernible or whether mere bass reverberations are enough. Given the language of the ordinance, a person in his or her car cannot determine what volume of music is permissible under the ordinance.

{¶ 56} Regarding the second part of the analysis, the ordinance gives officials too much authority and too few constraints. Appellant's assertion is correct that the ordinance gives police unfettered discretion to choose whom to cite. Whether an officer can clearly hear a motor vehicle's audio system outside the vehicle turns on who the particular officer is. What one officer considers "plainly audible" another officer may not even notice. Such discretion encourages discriminatory enforcement. Nothing in the ordinance provides officers with guidance in discerning what volume is "plainly audible." The officers would greatly benefit from a distance requirement or decibel level to determine violations of the ordinance.

{¶ 57} As to the final part of the analysis, the ordinance unreasonably inhibits fundamental, protected freedoms. The ordinance gives officers the authority to cite individuals for playing audio systems in their motor vehicles at a volume that is "plainly audible." Since "plainly audible" is unclear as to what it prohibits, it is possible that citizens will be cited for engaging in protected speech activities.

{¶ 58} Given the above reasoning, the ordinance is unconstitutionally vague. For the reasons stated above, the decision of the trial court should be reversed and appellant's conviction vacated.

{¶ 59} Based on the foregoing, I respectfully dissent.