OPINION
{¶ 1} Six defendants have filed appeals of seven separate convictions for violating Youngstown Municipal Ordinance ("Ord.") 539.07(b), which prohibits drivers from operating their car stereo systems at an excessive volume level. The ordinance is challenged on the grounds that it overly restricts constitutionally protected speech, that it is void for vagueness, and that it allows for excessive fines. All seven defendants rely on a single brief submitted in this appeal. This Court recently upheld the constitutionality of a previous version of Ord. 539.07(b) inState v. Cornwell, 149 Ohio App.3d 212, 2002-Ohio-5178, 776 N.E.2d 572. Nevertheless, the arguments presented in this appeal raise a number of issues that were not reviewed in Cornwell. Most of the citations issued to the Appellants contain notations of how far away the officers were standing from the offending vehicles. This would seem to indicate that the citations were issued based on the 50-foot audibility measurement now contained in the revised version of Ord. 539.07(b). Based on the analysis that follows, we conclude that the current amended version of Ord. 539.07(b), including the 50-foot audibility test, is not unconstitutionally vague or overbroad and does not provide for unconstitutionally excessive fines. We affirm the convictions and sentences in each of the seven consolidated appeals.
 ASSIGNMENT OF ERROR {¶ 2} Appellants' single assignment of error states:
 {¶ 3} "The trial court erred in overruling defendants [sic] motion to suppress/dismiss and convicting defendants of violating youngstown city ordinance 539.07(b), excessive vehicular sound amplification devices prohibited because said ordinance unconstitutionally restricts free speech, provides for excessive fines and punishments, and provides no notice to a reasonable citizen that he/she may be violating the law."
 OVERBREADTH {¶ 4} Appellants allege that Ord. 539.07(b) discourages citizens from exercising constitutionally protected rights under the First Amendment. Ord. 539.07(b) states, in pertinent part:
 {¶ 5} "(b) Excessive Vehicular Sound Amplification DevicesProhibited.
 {¶ 6} "1. No person operating or occupying a motor vehicle upon any public road, street, highway or private property shall operate or permit the operation of any sound amplification system from within the vehicle so as to disturb the quiet, comfort or repose of other persons, or at a volume that is plainly audible from outside of the vehicle.
 {¶ 7} "2. `Sound amplification system' means any radio, tape player, compact disc, loudspeaker, speaker or other electronic device used for the amplification of musical instruments or other sounds.
 {¶ 8} "3. `Plainly Audible' means any sound produced by a sound amplification system from within the vehicle that can clearly be heard outside the vehicle at a distance of fifty (50) feet or more. Measurement standards shall be by the auditory senses, based upon direct line of sight. Words or phrases need not be discernable and bass reverberations are included. The motor vehicle may be parked, stopped, standing or moving."
 {¶ 9} The ordinance clearly prohibits drivers from broadcasting any type of sound — including, for example, political expression — that can be clearly heard at least 50 feet from the vehicle. Appellants contend that this curtailment of protected speech, under the pretext of reducing excessive noise, may completely discourage many people from broadcasting any protected speech from their automobiles, whether it be music or political messages or any other type of protected speech. According to Appellants, the ordinance should be invalidated in its entirety because it is constitutionally overbroad.
 {¶ 10} Any discussion of the alleged unconstitutionality of a statute or ordinance must begin with the premise that all legislative enactments bear a strong presumption of constitutionality. State v. Collier (1991),62 Ohio St.3d 267, 269, 581 N.E.2d 552. The party challenging a statute must prove that it is unconstitutional beyond a reasonable doubt. Id.
 {¶ 11} A statute or ordinance may be overbroad, "if in its reach it prohibits constitutionally protected conduct." Grayned v. Rockford
(1972), 408 U.S. 104, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222. The crucial question is whether the statute sweeps within its prohibitions a substantial amount of conduct that may not be punished under theFirst Amendment. Id. at 115, 92 S.Ct. 2294, 33 L.Ed.2d 222. The rationale of the overbreadth doctrine is that third parties not presently before the court may refrain from exercising their constitutionally protected rights for fear of criminal sanctions contained in an overly broad enactment.Village of Schaumburg v. Citizens for a Better Environment (1980),444 U.S. 620, 634, 100 S.Ct. 826, 63 L.Ed.2d 73.
 {¶ 12} The overbreadth doctrine is an exception to the traditional rules of standing and allows a party to assert the First Amendment rights of those not before the court. Brockett v. Spokane Arcades, Inc. (1985),472 U.S. 491, 503-504, 105 S.Ct. 2794, 86 L.Ed.2d 394. The overbreadth doctrine is only applied when First Amendment rights are at stake.Cleveland v. Trzebuckowski (1999), 85 Ohio St.3d 524, 528, 709 N.E.2d 1148.
 {¶ 13} When a court applies the overbreadth doctrine, the statute or ordinance in question is declared to be facially invalid. Junction 615,Inc. v. Ohio Liquor Control Comm. (1999), 135 Ohio App.3d 33, 41-42,732 N.E.2d 1025. For this reason, it has been said that the overbreadth doctrine is "manifestly strong medicine" that is employed sparingly, and only as a last resort. Broadrick v. Oklahoma (1973), 413 U.S. 601, 613,93 S.Ct. 2908, 37 L.Ed.2d 830.
 {¶ 14} It must also be noted that when a statute primarily regulates conduct rather than speech, the, "overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Id. at 615, 93 S.Ct. 2908, 37 L.Ed.2d 830. Ord. 539.07(b) is not primarily directed at the content of the broadcasted speech but at the volume of sound coming from automobile audio systems. The ordinance's prescription against loud noises is an attempt to control conduct, i.e., the use of the volume control on the car stereo, rather than an attempt to control the type of speech being broadcast. See Statev. Dorso (1983), 4 Ohio St.3d 60, 64, 4 OBR 150, 446 N.E.2d 449;Cornwell, supra, 149 Ohio App.3d 312, 2002-Ohio-5178, 776 N.E.2d 572, at ¶ 29. Therefore, we would need to find substantial overbreadth in order to invalidate the ordinance. See also Houston v. Hill (1987), 482 U.S. 451,458, 107 S.Ct. 2502, 96 L.Ed.2d 398.
 {¶ 15} Appellants' overbreadth argument necessarily involves a discussion of the Free Speech Clauses of both the First Amendment to United States Constitution and Section 11, Article I of the Ohio Constitution. The Ohio Supreme Court has held that, "the free speech guarantees accorded by the Ohio Constitution are no broader than theFirst Amendment, and that the First Amendment is the proper basis for interpretation of Section 11, Article I of the Ohio Constitution."Eastwood Mall, Inc. v. Slanco (1994), 68 Ohio St.3d 221, 222,626 N.E.2d 59, citing State ex rel. Rear Door Bookstore v. Tenth Dist.Court of Appeals (1992), 63 Ohio St.3d 354, 362-363, 588 N.E.2d 116. Therefore, Appellants' argument should be viewed primarily through case law dealing with the First Amendment to the United States Constitution, which states: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging thefreedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." (Emphasis added.)
 {¶ 16} Although Ord. 539.07(b) prohibits all excessive noise from being broadcast from automobile stereo systems, certain aspects of the ordinance are specifically directed at controlling the volume of broadcasts containing music and speech. The words "musical instruments," "bass reverberations," "words," and "phrases," are mentioned in the ordinance as specific aspects of the prohibited noise. Obviously, "words" and "phrases" are protected under the First Amendment. Music is also protected speech: "[m]usic, as a form of expression and communication, is protected under the First Amendment [to the United States Constitution]."Ward v. Rock Against Racism (1989), 491 U.S. 781, 790, 109 S.Ct. 2746,105 L.Ed.2d 661.
 {¶ 17} Although there is no universally accepted formula for framing an overbreadth analysis, in the instant case it will be helpful to ask the following questions: (1) is there a legitimate governmental interest at stake; (2) is the governmental interest primarily aimed at regulating speech itself or is it meant to control non-speech conduct; (3) if the government is regulating speech, what are the specific First Amendment rights that are threatened; and (4) are those First Amendment rights impermissibly curtailed by the ordinance. If we find that First Amendment rights are impermissibly curtailed by the ordinance, then we will also need to ask whether the regulation prohibits or curtails such a substantial amount of protected First Amendment rights that it must not be enforced under any circumstances.
 {¶ 18} First, there is no question that the City of Youngstown has an interest in protecting its citizens from excessive noise. See, e.g.,Dorso, supra, 4 Ohio St.3d at 64, 4 OBR 150, 446 N.E.2d 449. Municipal authority to regulate noise has been specifically granted by statute. R.C. § 715.49(A) states:
 {¶ 19} "(A) Any municipal corporation may prevent riot, gambling,noise and disturbance, and indecent and disorderly conduct or assemblages, preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants." (Emphasis added.)
 {¶ 20} Second, as already pointed out, the ordinance primarily regulates conduct, i.e., the conduct of operating automobile radios, cassette players, CD players, and the like.
 {¶ 21} Third, the First Amendment rights that are alleged to be curtailed by the ordinance are the right to play music from motor vehicles and the right to broadcast political ideas from motor vehicles.
 {¶ 22} The fourth question is crucial: does Ord. 539.07(b)impermissibly curtail the aforementioned First Amendment rights? The ordinance does not prohibit all forms of music or political speech on Youngstown's city streets. The ordinance only regulates the volume level of the protected speech, only affects motor vehicles and only regulates music and speech (as well as other noise) that are electronically amplified and broadcast. These type of restrictions would normally fall under the rubric of "time, place and manner" restrictions of protected speech.
 {¶ 23} A municipality, "may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are `justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" (Citations omitted.) Ward, 491 U.S. at 791,109 S.Ct. 2746, 105 L.Ed.2d 661. "The First Amendment has never conferred an absolute right to engage in expressive conduct whenever, wherever or in whatever manner a speaker may choose." Cincinnati v. Thompson (1994),96 Ohio App.3d 7, 15-16, 643 N.E.2d 1157, citing Greer v. Spock (1976),424 U.S. 828, 836, 96 S.Ct. 1211, 47 L.Ed.2d 505. If the ordinance qualifies as a valid time, place and manner restriction, then the ordinance does not place an impermissible burden on protected speech.
 {¶ 24} The first question in a "time, place, or manner" analysis is whether Ord. 539.07(b) is content neutral. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Id. at 791, 109 S.Ct. 2746, 105 L.Ed.2d 661. A statute that interferes with protected speech is content neutral so long as it is, "justified without reference to the content of the regulated speech." Clark v.Community for Creative Non-Violence (1984), 468 U.S. 288, 293,104 S.Ct. 3065, 82 L.Ed.2d 221. "The principal inquiry * * * is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Ward, 491 U.S. at 791, 109 S.Ct. 2746,105 L.Ed.2d 661.
 {¶ 25} The desire to reduce and control noise has repeatedly been held to be a content-neutral justification for laws that regulate the time, place, or manner of protected speech. Id. at 792, 109 S.Ct. 2746,105 L.Ed.2d 661; Boos v. Barry (1988), 485 U.S. 312, 320, 108 S.Ct. 1157,99 L.Ed.2d 333; Dorso, 4 Ohio St.3d at 64, 4 OBR 150, 446 N.E.2d 449. Ord. 539.07(b) qualifies as a content-neutral regulation.
 {¶ 26} The second prong of a "time, place, or manner" analysis seeks to determine whether the ordinance serves a significant governmental interest and whether the ordinance is "narrowly tailored" to serve that interest. A time, place, or manner regulation is narrowly tailored to serve a governmental interest, "`so long as the * * * regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" Ward, 491 U.S. at 799, 109 S.Ct. 2746,105 L.Ed.2d 661, quoting United States v. Albertini (1985), 472 U.S. 675,689, 105 S.Ct. 2897, 86 L.Ed.2d 536. Narrow tailoring, in the context of time, place, or manner restrictions, "need not be the least restrictive or least intrusive means" of achieving the government's intended result.Ward, 491 U.S. at 798, 109 S.Ct. 2746, 105 L.Ed.2d 661.
 {¶ 27} "So long as the means chosen are not substantially broader than necessary to achieve the government's interest, however, the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.' The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests' or the degree to which those interests should be promoted." Id. at 800, 109 S.Ct. 2746, 105 L.Ed.2d 661, quoting Albertini, 472 U.S. at 689, 105 S.Ct. 2897, 86 L.Ed.2d 536.
 {¶ 28} Ord. 539.07(b) has been shown to serve a significant governmental interest. The ordinance seeks to protect citizens against unwelcome and excessive noise. A municipality has, "`a substantial interest in protecting its citizens from unwelcome noise.' * * * [T]he government may act to protect even such traditional public forums as city streets and parks from excessive noise." Ward, 491 U.S. at 796,109 S.Ct. 2746, 105 L.Ed.2d 661, quoting City Council of Los Angeles v.Taxpayers for Vincent (1984), 466 U.S. 789, 806, 104 S.Ct. 2118,80 L.Ed.2d 772.
 {¶ 29} The next question is whether the ordinance is narrowly tailored. This Court has recently upheld the constitutionality of that portion of the ordinance dealing with noise that would "disturb the quiet, comfort or repose" of others. Cornwell, 149 Ohio App.3d 212,776 N.E.2d 572, at ¶ 40; see also State v. Cole, 7th Dist. No. 01 CA 73, 2002-Ohio-5191. This section of the ordinance is essentially aimed at preventing breaches of the peace, and only regulates noise that might cause a breach of the peace.
 {¶ 30} The second part of the ordinance (which was not reviewed inCornwell) prohibits the amplified broadcast of all sound that can be clearly heard at a distance of 50 feet from a motor vehicle. This restriction obviously achieves the municipality's goal of eliminating excessive noise. Any type of distance restriction, though, will prohibit a certain amount of noise that is not excessive. Simply because a sound may be clearly heard at 50 feet does not necessarily imply that the sound is excessive at 50 feet. The municipality's interest is to apparently prevent excessive noise at a distance fairly close to the motor vehicle. Noise that is clearly heard at 50 feet must be excessive at some unidentified point less than 50 feet. It is that closer hypothetical point that is actually being protected.
 {¶ 31} The 50-foot rule set forth in Ord. 539.07(b) appears to be narrowly tailored, at least in the context of a time, place and manner analysis. Although the City of Youngstown could have chosen a less restrictive means to achieve its goal, such as choosing a 100-foot rule or a 250-foot rule as some cities have done, it was not required to choose the least restrictive means available to achieve its governmental interest. Ward, 491 U.S. at 798, 109 S.Ct. 2746, 105 L.Ed.2d 661. The City of Youngstown could also have chosen a more restrictive approach to eliminate excessive noise.
 {¶ 32} A number of Ohio municipalities have used similar restrictions to control excessive noise. For example, Kelleys Island v. Joyce (2001),146 Ohio App.3d 92, 765 N.E.2d 387 (6th Dist.), upheld a local ordinance on Kelley's Island which prohibited noise which was, "plainly audible at a distance of 150 feet or more[.]" In State v. Boggs (June 25, 1999), 1st Dist. No. C-980640, the First District Court of Appeals upheld a Cincinnati ordinance that prohibited all noise that was, "plainly audible at a distance of 50 feet from the motor vehicle." Boggs held that "[i]t is reasonable to conclude that if the sound can be heard at such a distance, then the sound is excessively loud." Id. at 3. In Edison v.Jenkins (June 7, 2000), Fifth Dist. No. CA893, the Village of Edison had passed an ordinance stating that, "[i]t shall be prima facie violation of this Ordinance when the noise can be heard more than one hundred feet from the property where it is created." This ordinance was upheld on appeal. Finally, in Tiffin v. McEwem (1998), 130 Ohio App.3d 527,720 N.E.2d 587, the City of Tiffin established an ordinance prohibiting noise that was, "[p]lainly audible at a distance of 100 feet or more from the motor vehicle." The Third District Court of Appeals held that the ordinance was not unconstitutionally overbroad.
 {¶ 33} Turning to the final element of the time, place and manner analysis, we find that the ordinance allows for ample alternative channels for communication. The ordinance restricts only a very specific type of noise broadcast from motor vehicles. It does not prohibit direct human speech, or live music (as long as it is not amplified). It does not prohibit a person from playing amplified music while walking on city streets because Ord. 539.07(b) only deals with motor vehicles. The ordinance also contains exceptions for emergency vehicles and for sound systems that have been previously authorized by the City of Youngstown and that are used in compliance with that authorization. The ordinance is narrowly focused on a very specific type of amplified noise emanating from motor vehicles. All other types of noise or speech are not covered by the ordinance.
 {¶ 34} Based on our analysis, we find that the ordinance satisfies the requirements of a valid time, place and manner restriction on protected speech, and as such, is a permissible restriction on the constitutionally protected speech rights identified by Appellants.
 VOID FOR VAGUENESS {¶ 35} Appellants' second argument is that Ord. 539.07(b) is impermissibly vague. "[A]n enactment is void for vagueness if its prohibitions are not clearly defined." Grayned, 408 U.S. at 108,92 S.Ct. 2294, 33 L.Ed.2d 222.
 {¶ 36} "Under the vagueness doctrine, which is premised on theFourteenth Amendment due-process requirement that a `law give fair notice of offending conduct,' a statute is void for vagueness if it `"fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute" * * * [or if] it encourages arbitrary and erratic arrests and convictions.' Papachristou v.Jacksonville (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110,115-116 (quoting United States v. Harriss [1954], 347 U.S. 612, 617,74 S.Ct. 808, 812, 98 L.Ed. 989)." Thompson, 96 Ohio App.3d at 24,643 N.E.2d 1157.
 {¶ 37} The United States Supreme Court has also noted that: "[the] prohibition against excessive vagueness does not invalidate every statute which a reviewing court believes could have been drafted with greater precision. Many statutes will have some inherent vagueness, for `[i]n most English words and phrases there lurk uncertainties.'" Rose v. Locke
(1975), 423 U.S. 48, 49-50, 96 S.Ct. 243, 46 L.Ed.2d 185, quoting Robinsonv. United States (1945), 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed.
 {¶ 38} Ord. 539.07(b) contains two very distinct prohibitions. The first part of the ordinance prohibits the operation of sound devices from a vehicle so as to, "disturb the quiet, comfort or repose of other persons." This Court has recently upheld this part of the ordinance after it had been challenged on grounds that it was void for vagueness.Cornwell, 149 Ohio App.3d 212, 2002-Ohio-5178, 776 N.E.2d 572. InCornwell we relied on the holding and analysis in the Ohio Supreme Court case of Dorso, supra, which upheld similar language in a noise ordinance in the City of Cincinnati. Dorso, 4 Ohio St.3d 60, 61, 4 OBR 150,446 N.E.2d 449. The language of Ord. 539.07(b) is also similar to numerous "disturbing the peace" statutes that have regularly been upheld as constitutional by the courts. Cornwell at ¶ 15. Although Ord. 539.07(b) has been revised since Cornwell, the crucial "quiet, comfort or repose" language has not changed, and the analysis presented in Cornwell is equally applicable to the instant appeal.
 {¶ 39} Cornwell, however, did not deal with the second part of Ord. 539.07(b) prohibiting the operation of sound devices, "at a volume that is plainly audible from outside of the vehicle." Cornwell dealt with an earlier version of the ordinance that did not define the phrase "plainly audible." That phrase is now defined by the ordinance as follows:
 {¶ 40} "`Plainly Audible' means any sound produced by a sound amplification system from within the vehicle that can clearly be heard outside the vehicle at a distance of fifty (50) feet or more. Measurement standards shall be by the auditory senses, based upon direct line of sight. Words or phrases need not be discernable and bass reverberations are included. The motor vehicle may be parked, stopped, standing or moving."
 {¶ 41} Appellants contend that a statute is void for vagueness when it cannot be understood by the common citizen, does not provide fair warning to the behavior that is prohibited, allows for arbitrary and capricious enforcement by police officers, and inhibits people from exercising theirFirst Amendment right of freedom of expression because of fear of possibly violating the statute. See State v. Tanner (1984), 15 Ohio St.3d 1,3, 15 OBR 1, 472 N.E.2d 689.
 {¶ 42} Appellants' argument is not well taken. Ord. 539.07(b) clearly informs both the police and general public that motor vehicle sound systems may not be operated so as to be heard more than 50 feet away from the vehicle. A person who operates a car sound system can easily test this by turning on the volume and walking 50 feet away from the vehicle. The prohibition does not depend on weather or atmospheric conditions. It does not depend on the type of sound emanating from the vehicle. The measuring standard of the ordinance is simply whether or not the sound can be clearly heard from 50 feet or more away.
 {¶ 43} Appellants make a good point that some people might have more sensitive hearing and could detect noise at 50 feet that the driver of a vehicle might not hear. This variation among the hearing ability of every person does not invalidate the Youngstown noise ordinance. Courts consistently impose a reasonableness standard on loud noise ordinances so that, "the ordinance does not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive." Dorso,4 Ohio St.3d at 64, 4 OBR 150, 446 N.E.2d 449.
 {¶ 44} It is obvious that Appellants do not agree with the limits set within the ordinance. Nevertheless, Appellants' opposition to the restrictions imposed by the ordinance do not make those restrictions unclear. Ord. 539.07(b) is quite simple to understand and measure, and provides a uniform test for police officers and citizens to apply. The 50-foot audibility test may be more difficult to apply when conditions outside the vehicle are also producing excessive noise, because it may not be possible to distinguish between the vehicular noise and the extraneous noise. Extraneous noise, though, merely provides an additional defense against the charge. It does not invalidate the practical test that any driver can perform to see if he or she is in compliance with the ordinance: turn on the sound system, step out of the car, and walk 50 feet away. If you can clearly hear the sound, go back and turn it down.
 EXCESSIVE FINES AND PUNISHMENT {¶ 45} Appellants' claim that the penalties set forth for a violation of Ord. 539.07(b) violate Section 9, Article I of the Ohio Constitution and the Eighth Amendment to the United States Constitution, which deal with excessive fines and cruel and unusual punishment. This Court's recent Williams case, cited earlier, dealt with the system of fines set up by Ord. 539.07, and found it to be within acceptable statutory and constitutional parameters. State v. Williams, 7th Dist. No. 01 CA 221, 2002-Ohio-5022. The structure of fines has changed slightly since theWilliams case was decided, but the maximum possible fine under the ordinance remains at $1,100.00, applicable only for a third (or more) offense.
 {¶ 46} The punishment section of the ordinance reads as follows:
 {¶ 47} "5. Whoever violates this section is guilty of generating excessive vehicular sound. In addition to the penalty set forth in Section 539.99, the following penalties apply:
 {¶ 48} "First offense: A fine of fifty dollars ($50.00) to two hundred fifty dollars ($250.00);
 {¶ 49} "Second offense: A mandatory fine of five hundred dollars ($500.00);
 {¶ 50} "Third offense and thereafter: A mandatory fine of six hundred dollars ($600).
 {¶ 51} Ord. 539.99, which is referenced above, states:
 {¶ 52} "(a) Whoever violates any provision of this chapter is guilty of a minor misdemeanor for a first offense. For any subsequent offense, such person is guilty of a misdemeanor of the third degree. Each day such violation continues shall constitute a separate and distinct offense."
 {¶ 53} The maximum penalty available for a minor misdemeanor under Youngstown Municipal Ordinances is $100, and the maximum punishment for a third degree misdemeanor is 60 days in jail and a $500 fine. Ord. 501.99.
 {¶ 54} Williams held that Ord. 539.07(b) was a minor misdemeanor for a first offense and third degree misdemeanor for each subsequent offense, rather than an unclassified misdemeanor. Id. at ¶ 18. Williams also held that a municipality that defines an offense as a specific degree offense may also impose a fine above and beyond the amount listed for that degree offense. Id. at ¶ 27. Williams noted that the Ohio legislature has allowed for punishments beyond those listed as the basic penalties established for each specific degree of misdemeanor offense. Williams
cites as an example R.C. § 4511.99(A)(2)(a), which is listed as a first degree misdemeanor but allows for a maximum fine of $500 more than the maximum fine available for a first degree misdemeanor. Id. at ¶ 26.
 {¶ 55} Appellants contend that the system of fines set up in Ord. 539.07(b) violates the Eighth Amendment prohibition against cruel and unusual punishment. Appellants contend that the fines that are levied for violating Ord. 539.07(b) are disproportionate to the nature of the crime, citing State v. Hill (1994), 70 Ohio St.3d 25, 635 N.E.2d 1248, in support. Hill dealt with the constitutionality of a forfeiture statute and is not readily applicable to the instant cases. Hill did note, though, that the United States Supreme Court has given lower courts very little guidance on how to determine when a fine is excessive and grossly disproportionate to the conduct being punished. Id. at 33, 635 N.E.2d 1248.
 {¶ 56} Generally, if the fine that is imposed falls within the range of a properly enacted statute or ordinance, it will withstand anEighth Amendment challenge. State v. Evans, 153 Ohio App.3d 226, 2003-Ohio-3475,792 N.E.2d 757, at ¶ 65.
 {¶ 57} The Ohio Supreme Court has provided some guidance on the types of penalties that might violate the Eighth Amendment:
 {¶ 58} "It is generally accepted that punishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community.
 {¶ 59} "Discussions of the `cruel and unusual punishment' clause by the Supreme Court of the United States show that the prohibition is directed at punishments of an entirely different and less civilized kind from that involved in the instant case. In In re Kemmler, 136 U.S. 436,447, 10 S.Ct. 930, 932, 34 L.Ed. 519 which found electrocution to be a permissible punishment, Mr. Chief Justice Fuller said that punishments were cruel `when they involve torture or a lingering death' and that the term, cruel, implied `something more than the mere extinguishment of life.'
 {¶ 60} "Mr. Justice Douglas, concurring in Robinson v. California,370 U.S. 660, at page 676, 82 S.Ct. 1417, at page 1425, 8 L.Ed.2d 758, said: `The Eighth Amendment expresses the revulsion of civilized man against barbarous acts — the `cry of horror' against man's inhumanity to his fellow man.'
 {¶ 61} "The punishments contemplated by the Supreme Court of the United States in connection with the Eighth Amendment are almost unthinkable in a civilized society." (Some citations omitted.) McDouglev. Maxwell (1964), 1 Ohio St.2d 68, 69, 203 N.E.2d 334.
 {¶ 62} Furthermore, for a criminal penalty to violate theEighth Amendment, "the penalty must be so greatly disproportionate to the offense as to shock the sense of justice of the community." State v.Chaffin (1972), 30 Ohio St.2d 13, 17, 282 N.E.2d 46.
 {¶ 63} Although the fines imposed by Ord. 539.07(b) may be somewhat larger than those for other misdemeanors, they do not begin to rise to the level of barbarous, revolting or unthinkable. Although the noise problem in Youngstown was undoubtedly serious enough to require larger fines than are typical for minor misdemeanors or third degree misdemeanors, the criterion for an Eighth Amendment violation is not that the punishment is atypical. The punishment must be barbarous to violate the Eighth Amendment. We find Appellants' third argument to be unpersuasive.
 {¶ 64} Based on the analysis above, we find no constitutional infirmities with Ord. 539.07(b), and we overrule Appellants' sole assignment of error. The convictions and sentences in each of the seven appeals that have been consolidated for review are affirmed in full.
Donofrio, J., concurs.
DeGenaro, J., concurs.